CASE 54.—PROCEEDING BY BETTIE L. MURRAY AGAINST
          KATIE L. MURRAY AND OTHERS FOR THE
          APPOINTMENT OF A RECEIVER TO TAKE
          CHARGE OF CERTAIN LAND ON WHICH THE
          PLAINTIFF HAS A LIEN.—January 24.

# Murray v. Murray, &c.

Appeal from Todd Circuit Court.

W. P. SANDIDGE, Circuit Judge.

From the judgment both parties appeal.   Affirmed
on appeal and reversed on cross appeal.

1.  Vendor   and   Purchaser—Lien   of   Vendor—Enforcement—
    Receiver—Evidence.—In a suit by a vendor for the appoint-
    ment of a receiver of property on which she has a lien, evi-
    dence considered, and held insufficient to warrant granting
    the relief sought.
2.  Same—Insufficiency of Property.—Civil Code Prac., sec. 298,
    provides that, on motion of any party to an action who
    shows that he has a lien on any property, the right to which
    is involved in the action, and that the property is in danger
    of being lost, removed, or materially injured, the court may
    appoint a receiver to take charge of the property.   Section
    299 provides for the appointment of a receiver of mortgaged
    property at the instance of the mortgagee for the same rea-
    sons, and, in addition, if the property is probably insufficient
    to discharge the mortgage debt.   Held, that a receiver will
    not be appointed at the instance of the vendor, who has
    a lien for the purchase price, where the property is in no
    danger of being materially injured, though it may not be
    sufficient to satisfy the debt.
3.  Same—Rents and Profits.—The rents and profits of property
    cannot be set apart for the benefit of the vendor, unless
    done under authority of Civil Code Prac., sec. 298, providing
    for the appointment of a receiver if the property is in danger
    of being lost, removed, or injured.

Murray v. Murray, &c.

PERKINS & TRIMBLE, attorneys for appellant.

1. Sec. 298 of the Civil Code gives a lien holder the right to sequester rents in such a state of case as is presented in this record.

2. The death of the debtor does not defeat a creditor's right under Sec. 298 of the Code, nor in any way impair or diminish such right.

3. Prior to the death of the debtor neither the widow nor children, nor the common creditors had any claim to or lien upon these rents, but the lien holder did have an inchoate right to them, the assertion of which was not limited to the lifetime of the debtor. So that, even though on the death of the debtor, the widow and infant children as well as the unsecured creditors might acquire such interest in or right to these rents, it must be considered that their rights or interests are subject to the prior inchoate right of the lien holder which, when put into effect, would defer the subsequently acquired rights of. the widow and children and the unsecured creditors.

### AUTHORITIES CITED.

Civil Code, sec. 298; Mayfield v. Wright, 21 Ky. Law Rep., 1255; Wooley v. Holt, 14 Bush, 791; Newport & Cin. Bridge Co. v. Douglass,' trustee, 12 Bush, 707; Nesbit v. Wood, 22 Ky. Law Rep., 129; Ky. Statutes, sec. 1403 and 3862.

PETRIE & STANDARD, attorneys for appellees.

### POINTS AND AUTHORITIES.

1. The court did not err in refusing to appoint a receiver to take charge of the growing crops. Such crops became assets in the hands of the administrators to be held by them for the benefit of all creditors. (Section 3862, Ky. Statutes.)

2. The court erred in appointing a receiver to rent out the farm for the years 1907 and 1908 for the reason that the widow of decedent is entitled to dower in said land and to one-third of the rents and profits thereof until dower is assigned. (Section 2138, Ky. Statutes; Wilson v. Ewing, 79 Ky., 549, 3 Ky. Law Rep., 362.)

3. Because there was no proof showing any act of injury committed or about to be inflicted upon said property by the parties then in possession, to-wit, the widow and children. (Floors' Extr. v. Floors, 87 S. W. Reporter, 272; Columbia Finance & Trust Co. v. Morgan, 19 Ky. Law Rep., 1761.)

4. Because the evidence did not authorize the appointment of a receiver if C. P. Murray, had been living at the time same was offered.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER.

The only question involved in this case is whether or not the orders of the judge of the lower court relating to the appointment of a receiver can be sustained. In February, 1904, the appellant sold to C. P. Murray a tract of land containing 215 acres, for which he agreed to pay $4,200. He executed to her for this amount five notes, for $840 each, due, respectively, in one, two, three, four, and five years from date. C. P. Murray died on the 13th day of June, 1906, leaving surviving him his widow and four infant children. During his life, and with the consent of appellant, he sold 13 acres of the land. At the time of his death no part of the consideration had been paid, and appellant had also paid the taxes for the years 1903 and 1904. Neither the notes nor the deed provided that, upon the failure of Murray to pay any of the notes, all of them should become due, so that in June, 1906, the notes due in February, 1905 and 1906, were unpaid, as were the notes due in 1907, 1908, and 1909. On the 16th day of June, 1906, appellant brought this suit against the widow and children, averring that the land could not be divided without materially impairing its value, setting up her indebtedness, and alleging that the property was insufficient to satisfy her debt, and that it was in danger of being materially injured, and would be so materially injured, unless the court took charge of same; that there was wheat, corn, and tobacco growing upon the land; and she asked for the appointment of a receiver to take charge of the land, and that the

Murray v. Murray, &c.

crops then growing on the land be subjected to the payment of her debt. On the 20th of June, the widow and G. S. Weathers were granted letters of administration on the estate, and on the same day appellant filed an amended petition, alleging that the decedent left no personal estate, except what was exempt, and asking for a settlement of his estate.

The evidence heard by the judge with few exceptions, was in the form of affidavits; there being about an equal number introduced in behalf of each party. The substance of the affidavits introduced in behalf of appellant was that the decedent paid for the land as much as it was worth; that the farm had been cropped heavily in 1904, 1905, and 1906, which, in connection with the usage of it, had caused the land to deteriorate and diminish in value; that when Murray bought the land there were 12 or 15 acres of fairly good timber on the same, which he had cut; and that the property was in danger of being materially injured by reason of its usage and want of care, and there was much danger that the plaintiff would lose a part of her debt. The affidavits for appellee were in substance that Murray cultivated the land in a farmlike manner; that he improved the land in divers ways; that no timber was sold from the place, or cut, except that which was used in making some improvements; and that the farm was in better condition than when the appellant owned it, and worth more money than when she sold it—some of the affiants putting the increased value at as much as $500. We think it may be fairly said that the evidence discloses that the farm, when the application was made, was in about the same condition that it was when appellant sold it, and worth about the same amount. Appellant's security had been lessened, however, by the fact that 13 acres of the land had

been sold. The judge refused to place the land or crops in the hands of a receiver in 1906, but did order the court receiver to take charge of it during the years 1907 and 1908. Of this order both parties complain.

Civil Code Prac., sec. 298, in part provides that, "on the motion of any party to an action who shows that he has  *  *  *  a lien upon or interest in any property or fund, the right to which is involved in the action, and that the property or fund is in danger of being lost, removed or materially injured, the court or the judge thereof during vacation may appoint a receiver to take charge of the property or fund during the pendency of the action." The only authority for the appointment of a receiver in a case like this is to be found in this section, and it must be made to appear that the property which is sought to be put in the hands of a receiver is in danger of being lost, removed, or materially injured, or (we might more properly add) that the property is in danger of being "materially injured," as there is no danger that this property will be lost or removed. There is a marked distinction, and one that has been carefully preserved by this court, as we will proceed to show, between the section of the Civil Code of Practice quoted and section 299, providing that, "in an action by the mortgagee for the sale of mortgaged property, a receiver may be appointed if it appear that the property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt." Under this latter section a receiver may be appointed to take charge of the mortgaged property, if it appear that the condition of the mortgage had not been performed, and that the property is proba-

bly insufficient to discharge the mortgage debt, although the mortgagee might be unable to show that the property was in danger of being lost, removed, or materially injured. A general lien-holder cannot obtain the appointment of a receiver upon a showing that his debt is overdue and that the property incumbered by the lien is probably insufficient to pay it. He must establish that the property is in danger of being lost, removed, or materially injured. The property may not be sufficient to satisfy his debt; but this fact alone will not authorize the court to put it in the hands of a receiver.

There is no pretense that appellant is entitled to the rents or profits of the land by virtue of any contract, and in the absence of a contract it is clear that the rents and profits cannot be set apart for the benefit of appellant, unless it can be done under section 298. Woolley v. Holt, 14 Bush, 788; Douglass v. Cline, 12 Bush, 608; Newport & Cincinnati Bridge Co. v. Douglass, 12 Bush, 673; Nesbitt v. Wood, 56 S. W., 714, 22 Ky. Law Rep., 127; Mayfield v. Wright, 54 S, W., 864, 21 Ky. Law Rep., 1255. Therefore, in determining whether or not a vendor, in a suit to enforce the collection of his lien notes, is entitled to a receiver to take charge of the land and rent it out for his benefit, we must look entirely to section 298, and apply the provisions thereof to the facts of the case. It is stated in Collins v. Richart, 14 Bush, 621, that "courts of equity have always been reluctant to interfere with the possession of real estate by the appointment of a receiver, and they never do so unless the remedy at law is incomplete. The vendor, who conveys and puts his vendee in possession, reserving a lien for the purchase money, reserves that lien upon the land, and not upon the rents and profits. He vests the vendee with the legal title and

the right under the contract of sale to use and occupy the property. He looks to the land and to his personal judgment against his vendee for the satisfaction of his claim. The right to possess and use the land by the vendor does not follow as an incident to the breach of the vendee's covenant to pay. The vendor occupies a no more favorable attitude, so far as concerns the property and property rights of the vendee, than any other creditor, except to the extent of his lien upon the land sold by him." In Columbia Finance & Trust Company v. Morgan, 44 S. W., 390, 19 Ky. Law Rep., 1762, this court said: "In an application to appoint a receiver by a vendor, the motion should not prevail unless it is made manifest, not only that the party in possession is insolvent and the property insufficient to pay the debt, but also that the party in possession is committing or threatening to commit waste or by bad husbandry impairing the value of the plaintiff's security. In this instance it appears from the affidavits which are wholly uncontroverted that the vendee was hopelessly insolvent and that material and irreparable damage would result to the farm from plowing up the grass land." Therefore the application for the receiver in that case was granted. Here there is no evidence that the parties in possession of the land are doing or threatening to do anything that will materially or at all injure it, nor is there any effort to show that they have committed or will commit any waste or depredation that would lessen the security of the vendor. The entire motion is based upon the fact that the decedent had not properly cultivated the land, and had by his unfarmerlike methods depreciated its value, and had cut some timber from it, every ground upon which the receiver was sought being strongly contested.

When the court, as in this case, undertakes to give to the vendor additional security for his claim, or, in other words, to extend the contract so as to embrace in it for his benefit property that was not included in the contract, or contemplated by the parties when it was made, the evidence should be very convincing, and bring the applicant fairly within the Code provision authorizing the court to give him this additional security. The mere fact that a portion of the lien debt is due and unpaid, or that other parts of it will not be due for some period of time, or the possibility that the property may be depreciated in value before all of the lien notes fall due, is not sufficient to authorize the interposition of the courts. The parties who made the contract must be presumed to have understood its meaning and effect. The vendor voluntarily extended over a period of years the payment of the lien debt, without providing for the maturity of the whole of it upon default in the payment of any of it. When appealing to the court to make a material alteration in or addition to the contract for his protection, he should come prepared to fully show that under the law he is entitled to the relief sought. It is quite a serious matter to take property out of which the persons in possession expect to make the money to pay the debt, and turn it over to the person to whom the debt is owing, thereby probably depriving the vendee of means and opportunity to pay the debt. It has been held by this court, and is undoubtedly correct, that when the vendee is materially injuring the property by committing waste or recklessly depreciating its value, and it is manifest that serious loss will result to the lienholder, the court will grant the relief necessary, rather to prevent the debtor from injuring the

vol. 124—28.

security than to protect the creditor, although his protection results from the relief. But the court is primarily induced to grant the relief because of the misconduct or bad faith of the debtor. In the case before us there is no evidence whatever that the persons in possession of the land at the time the receiver was appointed were injuring the land in any way, or guilty of any bad faith or other misconduct that would indicate a purpose on their part to depreciate the value of the land or deprive the lien-holder of any right to which he was entitled. We do not mean to hold that the mere fact that the property had passed from the possession of a person who was injuring it into the possession of a person who would protect it would deny to the creditor the right to bring a suit immediately upon the transfer. That question is not before us.

The evidence exhibited in this record is not of such a character as to authorize the court to take this property from the person now in possession of it and give the rents and profits to the vendor. After carefully considering this record and the briefs of counsel, we have reached the conclusion that the evidence did not warrant the judge in appointing a receiver to take charge of the property for the years 1907 and 1908, or authorizing the appointing of a receiver for the year 1906.

Wherefore the order is affirmed on the original and reversed on the cross appeal.