Argued October 30, affirmed December 20, 1961

# NYGAARD ET UX *v.* ANDERSON·

366 P. 2d 899

*Charles E. Boardman*, Bend, argued the cause and submitted briefs for appellant.

*Owen M. Panner*, Bend, argued the cause for respondents. On the brief were McKay, Panner & Johnson, Bend.

Before MCALLISTER, Chief Justice, and ROSSMAN, WARNER, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

O'CONNELL, J.

This is an appeal by defendant, Agnes M. Anderson, from a decree granting to plaintiffs strict foreclosure of a contract for the sale of a motel and denying defendant's prayer for rescission and restitution.

On August 12, 1956 plaintiffs contracted to sell the motel property to the defendant Agnes M. Anderson and her husband, Arthur Anderson. Defendant's husband died prior to the institution of this suit. As a down payment recited in the contract as "$27,676.17 credit for real and personal property" defendant and her husband transferred to plaintiffs certain real and personal property. The balance was payable in monthly installments of $484.10. The contract also recited that the "[p]roperty is subject to mortgage to A. W. Clayton and Leafy M. Clayton, husband and wife, in the amount of $29,600, which seller agrees to pay from monthly installments." The contract provided that "[t]he buyer shall be entitled to possession of said lands on August 12, 1956, and may retain such possession so long as he is not in default under the terms of this contract." The default clause read as follows:

"And it is understood and agreed between said parties that time is of essence of this contract, and in case the buyer shall fail to make the payments above required, or any of them, punctually within ten days of the time limited therefor, or fail to keep any agreement herein contained, then the seller at his option shall have the following rights: (1) to declare this contract null and void, (2) to declare the whole unpaid principal balance of said purchase price with the interest thereon at once due and payable and/or (3) to foreclose this contract by suit in equity, and in any of such cases, all rights and interest created or then existing in favor of the buyer as against the seller hereunder shall utterly cease and determine and the right to the

possession of the premises above described and all other rights acquired by the buyer hereunder shall revert to and revest in said seller without any act or re-entry, or any other act of said seller to be performed and without any right of the buyer of return, reclamation or compensation for moneys paid on account of the purchase of said property as absolutely, fully and perfectly as if this contract and such payments had never been made; and in case of such default all payments theretofore made on this contract are to be retained by and belong to said seller as the agreed and reasonable rent of said premises up to the time of such default. And the said seller, in case of such default, shall have the right immediately, or at any time thereafter, to enter upon the land aforesaid, without any process of law, and take immediate possession thereof, together with all improvements and appurtenances thereon or thereto belonging."

On October 30, 1959 defendant entered into a contract for the sale of the motel property to Arthur J. Faria and wife for the sum of $78,000, of which $25,429.41 was designated as a down payment. The Farias became delinquent in their payment of the installments to defendant under their contract. Defendant became delinquent in her payments on the Nygaard contract, having made no payments after January, 1960. The real property taxes had not been paid after the execution of the contract either by defendant or by the Farias.

On March 1, 1960, on March 29, 1960, and again on April 4, 1960 plaintiffs notified defendant that it would be necessary to foreclose the contract unless the delinquencies were remedied. On March 31, 1960 defendant acknowledged receipt of the notice of March 29, 1960. In her letter she stated, "I am not in a position to do anything about keeping up the payments or pay-

ing the taxes, especially since the Farias are in arrears on their payments to me on my interest since Dec. * * * I am also writing to Mr. and Mrs. Faria today in the hopes that by April 10, they may be able to take care of these obligations as per their contract and continue on as they had expected to."

On April 26, 1960 plaintiffs filed their suit to foreclose. They took possession of the property about May 1, 1960. At the time suit was filed defendant had paid more than one-half of the purchase price. Also, at that time there was a $22,000 balance due on the Clayton mortgage.

On May 12, 1960 Mr. Boardman, defendant's attorney, wrote to Mr. Panner, attorney for plaintiffs, as follows:

"May 12, 1960

\* \* \* \* \*

"Dear Mr. Panner

"Re: Nygaard vs Anderson & Faria

"Mrs. Anderson has sent to me the complaint and summons in this matter and I would like to have a few days to consider it.

"In connection with our oral conversations about the right of Mrs. Nygaard to have possession under the contract, I have had little time to consider it since learning that she had taken possession and so without making any decisions about it will advise that on behalf of Mrs. Anderson we will continue to consider it wrongful.

"We have had some inquiry about sale and I will assume that our previous arrangement that we might look for a buyer as the salvation of our position will continue without prejudice to any of these matters.

"Very truly

/s/ Charles E. Boardman
"Charles E. Boardman"

Mr. Panner replied as follows:

"May 16, 1960

\* \* \* \* \*

"Re: Nygaard v. Anderson and Faria

"Dear Mr. Boardman:

"Thank you for your letter of May 12, 1960 concerning the above entitled matter.

"I felt that I should clear up one point. You mention in the last paragraph of your letter that we had a previous arrangement about the sale of the property. I know that we discussed a number of possible solutions and I am still willing to discuss future solutions with you but I don't want to acquiesce in any statements that indicate that there is any existing arrangement. I was not aware we had any agreement. We did have a discussion about attempting to work out some such arrangement which would avoid the necessity of filing a lawsuit and which would give Mrs. Nygaard possession with the consent of Mrs. Anderson. I assume from your letter that Mrs. Anderson is not consenting to the possession and I do not want any implications left that we are obligated to her or that there is any existing understanding.

"Very truly yours,

"McKAY, PANNER, MARVIN & JOHNSON
/s/ Owen M. Panner (g)
"OWEN M. PANNER

"OMP/gb"

Mr. Boardman replied:

"May 17, 1960

\* \* \* \* \*

"Dear Mr. Panner    Nygaard vs Anderson & Faria
"This will verify your impression that I do not claim that we have any agreements affecting this matter and that my only purpose negotiating with

others would be with a view of making a proposal to you which you may feel free to act on as you see fit.

"Very truly

/s/ Charles E. Boardman
"Charles E. Boardman"

On August 5, 1960 Mr. Boardman informed Mr. Panner by letter that "confirming my previous oral advice we will counterclaim for rescission on the ground that possession by Nygaards is wrongful." The counterclaim was filed, praying for rescission and restitution on the ground that plaintiffs unlawfully took and retained possession of the property.[①]

The sole issue on appeal is whether plaintiffs' taking possession of the premises was wrongful and, therefore, constituted a repudiation of the contract entitling defendant to "rescind."

■■ By filing the suit for strict foreclosure plaintiffs waived their right to declare a forfeiture in accordance with the contract. *Macomber v. Waxbom,* 213 Or 412, 417, 325 P2d 253, 255 (1958). In that case the court, speaking through Mr. Justice McALLISTER, said:

"* * * While that suit was pending vendors had no right to attempt a forfeiture by ousting purchasers of possession. If vendor wrongfully attempts to declare a forfeiture the purchaser may treat such action as a repudiation of the contract by vendor and elect to rescind. [Citations]."

However, the resumption of possession of the premises by vendor does not ipso facto constitute a forfeiture

---

[①] The prayer for relief was as follows:

"Wherefore it is prayed that if plaintiffs be awarded a decree of foreclosure that the decree provide for foreclosure by execution sale and that as an off-set against any money judgment plaintiffs be allowed credits for payments on prior liens against any surcharge for the value of occupancy pendente

of the contract. *Morrison et al v. Kandler et ux*, 215 Or 489, 334 P2d 459 (1959) teaches us that the vendor's resumption of possession after filing a suit for strict foreclosure may, in the proper case, be consistent with his intent to affirm the contract until the decree of foreclosure is entered. The court said:

> "\* \* \* In determining whether the vendors repudiated the contract after they resumed possession, the test is whether their conduct evinced an intention to no longer be bound by the contract." Id. at 508, 334 P2d at 467.

The court held that the vendors' repossession under the circumstances was not a repudiation of the contract.

We now consider whether, in the case at bar, the vendors' repossession constituted a disaffirmance of the contract prior to the decree of strict foreclosure. Our task is made difficult because neither the parties nor their counsel in the various maneuvers prior to the trial of the cause clearly disclosed by words or conduct the theory upon which they were proceeding. Vendors' remedies upon default by the purchaser fall into either one of two classes; (1) remedies consistent only with the affirmance of the contract, or (2) remedies consistent only with the repudiation of the con-

---

lite and an accounting but that defendant prays that a decree be made rescinding the contract sued on, that defendant have judgment against plaintiff for $56,515.00 and 6% interest from the time paid, for an accounting and allowance to plaintiffs for the reasonable value of occupancy, for a lien in the property to secure payment of the judgment and for such other and further relief as to the court seems equitable in the premises."

Defendant later withdrew from his answer the following allegation:

"That defendant has paid $47,515.48 under the contract and improved the land to the extent of $9000.00 including new fixtures. That on execution sale the property would bring a price greater than the claim of the plaintiffs if sold subject to outstanding liens and that it is just and equitable and necessary to prevent an unconscionable hardship on defendant that plaintiffs be required to foreclose by execution sale."

tract. If the vendor seeks to recover the installments due on the contract or brings suit for specific performance or brings suit for strict foreclosure[②] he has elected to affirm and enforce the contract. On the other hand, if he brings an action of ejectment or takes possession of the premises under circumstances indicating an intent to deprive the purchaser of possession under the forfeiture and right of entry provision of the contract, the vendor has elected to regard the contract as no longer continuing.

■■ In the case at bar the filing of the suit to foreclose the contract evidenced plaintiffs' intent to affirm the contract and continue it in force until the decree of foreclosure was entered. If plaintiffs resumed possession for the purpose of revesting in themselves the full interest in the premises, forfeiting the equitable interest of the defendant, their conduct would, of course, be inconsistent with the theory of affirmance upon which the suit to foreclose is predicated. Moreover, such conduct would be wrongful because, as we have already observed, plaintiffs, in filing the suit to foreclose, waived their right to repossess the property under the forfeiture provision of the contract. If, however, plaintiffs' resumption of possession was not intended as a negation of defendant's possessory and equitable interest in the property, there is no such inconsistency and plaintiffs would then be entitled to prevail. We note again that *Morrison et al v. Kandler*

---

[②] It has been said that the vendor's suit to foreclose is of a hybrid nature and that "it cannot be placed entirely in either the affirmance or disaffirmance of contract category." New York Law Revision Commission Reports, p. 359 (1937). It is clear from our cases, however, that until the decree of foreclosure is entered the contract is regarded as subsisting. "A suit for strict foreclosure recognizes that the contract is presently in effect and seeks to enforce it. It is an affirmance of the contract." Morrison et al v. Kandler et ux, 215 Or 489, 500, 334 P2d 459, 464 (1959).

*et ux,* supra, holds that a vendor's resumption of possession of the premises after filing suit for strict foreclosure is not necessarily a repudiation of the sale contract. In that case, the vendors filed a suit to foreclose a contract for the sale of a ranch. The purchasers vacated the premises. The vendors resumed possession and operated the ranch during the pendency of the suit. It was held that vendors had not, by their conduct, evinced an intent to repudiate the contract. In so holding the court announced the principle that "when a purchaser without sufficient cause repudiates a contract of sale and voluntarily surrenders the property, a vendor who has resumed possession and elected to sue for strict foreclosure is given a reasonable latitude in operating the property pending the final determination of his suit. To hold otherwise would put a premium on the conduct of a purchaser who refuses to perform his contract and vacates the property." *Morrison v. Kandler,* supra at 506-507, 334 P2d 466-467. The court found that the vendors were, at all times, prepared to surrender the property to the purchasers in substantially the same condition as it was when the purchasers vacated it, and that the vendors were also prepared to account for the personal property disposed of by them, together with the reasonable rental value of the real property while it was in their possession.

■ We regard the Morrison case as clearly in point. In the present case there was no evidence indicating that plaintiffs' resumption of possession was intended as a repudiation of the contract. In the absence of such evidence the vendors' possession is to be regarded as being in aid of their effort to foreclose the contract evidenced by the filing of the suit to foreclose, rather than as a repudiation of the contract and a discontinu-

ance of the pending suit.[9] To draw the inference of repudiation of the contract from plaintiffs' possession it would be necessary to assume that plaintiffs had elected to seek a new remedy, abandoning the suit to foreclose and adopting in its stead a remedy by way of forfeiture. The premises were unoccupied. The Farias had defaulted on their contract with the defendant and had moved out apparently with the intent of abandoning the premises. Plaintiffs took possession a few days after filing the suit to foreclose. It is not reasonable to assume that they would seek a particular remedy one day and an inconsistent remedy a few days later. Moreover, being represented by counsel, it is also reasonable to assume that plaintiffs would be advised that the suit to foreclose constituted a waiver of the right of forfeiture under the contract and that repossession would be wrongful, entitling defendant to rescission. It is our conclusion, then, that where the premises are unoccupied and vendor resumes possession after filing a suit to foreclose, in the absence of evidence indicating an intent to disaffirm the contract or circumstances inconsistent with the existence of the contract, it will be assumed that possession is taken to protect vendor's security interest pending the suit to foreclose.

The inference that plaintiffs did not intend to abandon their suit to foreclose is strengthened by other evidence in this case. Mrs. Nygaard testified that Clayton, who held a mortgage on the property, threat-

---

[9] There is a conflict of authority as to whether vendor's repossession of the premises upon purchaser's default is a ground for rescission. Annotation, 134 ALR 1064, 1072-1075 (1941). A similar conflict exists in the cases involving the conditional sale of chattels. 2 Black, Rescission and Cancellation § 531 (2d ed 1929); Vold, Sales § 58, p 294 (2d ed 1959). Where repossession is taken prior to or without filing a suit to foreclose and there is no evidence of vendor's intent, it would seem reasonable to infer that repossession was taken pursuant to the forfeiture provision of the contract.

ened to foreclose unless plaintiffs took possession and started making payments on the mortgage debt and on the delinquent real property taxes. It was further shown that, upon taking possession of the premises, plaintiffs were instructed by counsel to maintain an accurate record of all income and expenses incurred in the operation of the motel. The plaintiffs kept such records during their occupancy of the premises.

To support her contention that plaintiffs intended to work a forfeiture through repossession defendant points to certain statements made by Mrs. Nygaard in her deposition. She deposed as follows:

"Q Who is in possession of this property at this time, the property that you sold to the Andersons?

"A Well, I am at the time.

\* \* \* \* \*

"Q So the contract is just with her now and I was wondering, do you have any agreements or understanding with Mrs. Anderson of any kind?

"A No. I haven't talked to her since it happened.

\* \* \* \* \*

"Q Well, do you claim then that you have the right to possession at this time?

"A Yes, I think I—according to law.

"Q And why do you—why do you claim the right of possession? Can you explain it, please?

"A You say why?

"Q Yes.

"A Well, because she didn't keep up her contract and didn't pay taxes.

"Q Do you have any other reason?

"A No.

"Q You base your right to possession then on the contract that says that she would have to keep her contract paid up or else you would foreclose it and take it back; is that right?

"A Uh-huh. \* \* \*"

Mrs. Nygaard's statement of the basis of her right to repossess the property was equivocal. Her statements that plaintiffs had the right to possession "according to law" and that they had the right to "foreclose it and take it back" can be regarded as the assertion of the right to possession for the purpose of protecting plaintiffs' interest in the property during the pendency of the suit to foreclose. We so regard it.

█ Plaintiffs' counsel attempts to derive plaintiffs' right to repossess the property from the language of the contract.④ But the provisions relied upon describe the vendor's right to possession upon a forfeiture or after foreclosure and not the right to possession pendente lite. In other words, we do not regard these as provisions relating to the preservation of vendor's security through receivership or self-help during the course of foreclosure. The absence of a provision for the preservation of security does not preclude the appointment of a receiver, *Ross v. Vernam*, 6 App Div 246, 39 NYS 1031 (1896)⑤, or the resumption of possession by vendor to avoid waste or to protect his security interest in the property.⑥

Defendant relies upon *Macomber v. Waxbom*, 213 Or 412, 325 P2d 253 (1953). In that case plaintiff

---

④ The contract provides that "[t]he buyer shall be entitled to possession of said lands on August 12, 1956, and may retain such possession so long as he is not in default under the terms of this contract." After setting out the options open to plaintiffs upon purchaser's default, the contract provides that "in any such cases, all rights and interest created or then existing in favor of the buyer as against the seller hereunder shall utterly cease and determine and the right to the possession of the premises * * * and all other rights acquired by the buyer hereunder shall revert to and revest in said seller without any act of re-entry, or any other act of said seller to be performed * * *."

⑤ Receivers have been appointed for a variety of reasons in land sale contract cases. W. R. Reynolds & Co. v. Gordon, 234 Mich 189, 207 NW 811 (1926) (to prevent waste); Burton v. May, 297 Mich 571, 298 NW 286 (1941) (to enable vendor to make payments due under a prior mortgage); Darusmont v. Patton, 4 Lea

vendor sought strict foreclosure of a contract for the sale of real property in British Columbia upon which were two hunting and fishing cabins. After the execution of the contract the purchasers used the premises for vacation purposes in 1952. They left various items of personal property in the cabins. About four months after suit had been filed the plaintiff went upon the property, removed defendants' padlocks from the doors of the cabins and replaced them with padlocks of his own. He did not inform the defendants of his actions. The court held that plaintiff's conduct constituted an attempted forfeiture of the contract entitling defendants to rescind.

The Macomber case is distinguishable from the case at bar. In the former case the vendor's conduct in substituting his padlocks for those of the purchaser quite clearly indicated the intent to act in derogation of the purchasers' possessory rights. In the case at bar plaintiffs did nothing to indicate that the possessory rights of defendant or the Farias prior to the foreclosure decree would not have been recognized. Quite to the contrary, there was, as we have pointed out, evidence that plaintiffs regarded their role as preservers of the property pendente lite.

The decree of the lower court is affirmed.

597 (Tenn Sup Ct 1880) (to prevent a tax sale pending suit to enforce "vendor's lien"); Cotulla v. American Freehold Land Mortgage Co., 86 SW 339 (Tex 1905) (to protect vendor when the value of the security was decreasing and purchaser would be unable to pay his debt). But see, Tumlin, trustee et al v. Vanhorn, 77 Ga 315, 3 SE 264 (1887) (receivership denied for failure to show that buyer was less able to pay at the time of suit than at the time of contracting); Murray v. Murray, 124 Ky 426, 99 SW 301 (1907) (receivership denied for failure to show property was in danger of being lost or removed); Denby v. Ozeran, 255 Mich 477, 238 NW 218 (1931) (receivership denied for failure to show waste or insufficiency of security).

© Morrison et al v. Kandler et ux, 215 Or 489, 334 P2d 459 (1959).