Submitted January 8, affirmed February 19, petition for
rehearing denied March 17, 1964

# LEIGHTON *v.* HAWKINS ET UX
### 389 P. 2d 460

Reuben Lenske, Portland, filed briefs for appellants.

George A. Rhoten, Myron L. Enfield, and Rhoten, Rhoten & Speerstra, Salem, filed a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

GOODWIN, J.

This is an appeal from a decree of strict foreclosure entered for the plaintiff-vendor, L. D. Leighton, against the defendants-purchasers of certain real property in Lincoln County.

A conditional sales contract was entered into on February 1, 1959, between Leighton and the purchasers. The purchase price was $4,000, with a $500 down payment and the balance to be paid at the rate of not less than $25 each month. Time was made of the essence of the contract. In the event of default by the purchasers, the contract gave the seller the rights:

"(1) to declare this contract null and void, (2) to declare the whole unpaid principal balance of said purchase price with the interest thereon at once due and payable and/or (3) to foreclose this contract by suit in equity * * *."

The issue is whether, under the facts of this case, it was inequitable or unjust for the trial court to

grant a decree of strict foreclosure. *Corn Belt Products Co. v. Mullins,* 172 Neb 561, 110 NW2d 845 (1961); *Swanson v. Madsen,* 145 Neb 815, 18 NW2d 217 (1945).

The testimony revealed that one Reuben Lenske, purporting to act as attorney for the purchasers, arranged for the purchase and acted throughout the life of the contract as the agent of the purchasers. He assumed responsibility for the payment of the monthly obligations.

Letters between Lenske and the real-estate broker who handled the transaction, one Charles V. Phillips, established that Phillips undertook as the agent of the purchasers to rent out a small house on the property in question. Phillips' authority, which was not spelled out at the trial with conspicuous clarity, apparently included the right to collect monthly rentals from the tenant and the duty to apply them to the contract installments.

Whenever the rent payments were tardy, or fell below the $25 required for the installment, Phillips notified Lenske. The record shows that Lenske supplied the necessary funds to meet the payment for any month for which the rent was not collected. On occasion, the funds supplied by Lenske would exceed the installments then due, and the excess would be held in reserve by Phillips. This practice continued up to, and including, the August 1961 installment.

The last tenant to whom the property was leased, one Al Prater, was unwilling or unable to pay his rent during 1961. The correspondence between Phillips and Lenske, from December 1960 to May 1961, is replete with advices from Phillips that Prater was in arrears in his rent. As of April 8, 1961, Prater

was behind in his rent from January of that year. Lenske continued to meet the contract payments as soon as he received notice from Phillips.

On August 18, 1961, Phillips wrote Lenske that the vendor "* * * has asked me to inform you that if the payments are not made in the future as per the contract agreement he will take legal action."

Three days later Lenske replied, enclosing a check for $50 to cover the July and August installments. This letter contained a promise to write Prater "and see if I can't get him started making payments again." Lenske testified that he admonished Prater to pay the rent, but these efforts were unavailing, as it turned out. Prater paid no further rent.

On January 2, 1962, almost five months after the last exchange of letters, the vendor through his attorneys attempted to exercise his right under the written agreement to declare the contract in default and the remaining balance immediately due. At that time there was a balance of $3,228.85, together with interest at six per cent.

Lenske answered the demand for $3,228.85 by an offer to make up any delinquent installments. This letter was not answered. Approximately two weeks later, Lenske again offered to keep the contract current. This letter was not immediately answered.

On February 12, 1962, the vendor's attorney's wrote Lenske, again demanding full payment of the contract balance. Lenske thereupon forwarded a check for $250 to cover ten monthly payments. This sum covered all payments then in default and an additional sum to apply toward future payments.

This tender was acknowledged by the attorneys on February 19, 1962, but no formal acceptance was made. Instead, the attorneys said they would consult

with their client to ascertain whether he would accept the check as a cure of the defaults. A month later the check was returned. The vendor again made demand for the entire balance of the purchase price. The demand was not met. The present suit resulted.

The plaintiff demanded strict foreclosure of the purchaser's equity under the contract. In so doing he has affirmed the contract. *Nygaard et ux v. Anderson,* 229 Or 323, 366 P2d 899 (1961). He has also submitted himself to the jurisdiction of a court of equity and therefore must himself be prepared to do equity. *Zumstein v. Stockton et ux.,* 199 Or 633, 643, 264 P2d 455 (1953).

In *Gulick v. Copeland,* 186 Or 640, 648-649, 207 P2d 1042 (1949), we set forth the rules governing such suits by approving the language in *Harrington v. Birdsall,* 38 Neb 176, 186, 56 NW 961 (1893):

"* * * The remedy by strict foreclosure of land contracts cannot be resorted to in all cases. The remedy being a harsh one, courts of equity will decree a strict foreclosure only under peculiar and special circumstances. Applications of that character are addressed to the sound legal discretion of the court, and they will be granted in cases where it would be inequitable to refuse them. If the vendee or purchaser has not been guilty of gross laches, nor unreasonably negligent in performing the contract, a strict foreclosure should be refused on the ground that it would be unjust, even though the vendee may have been slightly in default in making a payment. So, for the same reason, a strict foreclosure will be denied where the premises have greatly increased in value since the sale, or where the amount of unpaid purchase money is much less than the value of the property. On the other hand, if the vendee, without sufficient excuse, fails to make his payments according

to the stipulations of his contract, and for an unreasonable time remains in default, the vendor may have a strict foreclosure of the contract for the sale and purchase of the land, unless some principle of equity would be thereby violated."

■ In the case at bar, it is clear that the purchasers have been guilty of gross neglect. Few of the contract payments were made on time, despite the time-essence clause of the contract. At the time this suit was commenced, the purchasers were five months in arrears. Notice and demand are not conditions precedent the right to foreclose. *Grebe v. Rohrer,* 148 Or 177, 180, 34 P2d 927, 35 P2d 985 (1934); *Turnbow v. Keller,* 142 Or 200, 205, 12 P2d 558, 19 P2d 1089 (1933).

■ The purchasers now contend that by holding their tendered $250 check for one month, the vendor's attorneys accepted the same and waived the purchasers' defaults. The contention is without merit. There is nothing in the record to show that one month was an unreasonable time in which to arrange for consultation with a client, advise him, and permit him to decide what he wanted to do. There is no showing that the purchasers had any reason to believe that a partial payment of the contract balance would be acceptable, nor is there any evidence that the purchasers had reason to expect a more expeditious handling of the matter than they received. Punctuality was not noticeable in their performance of the contract.

■ We believe that the trial judge correctly appraised the equities of the parties and concluded that the equities lay with the unpaid vendor. Foreclosure was fully justified.

Affirmed.