Argued and submitted January 26, 1983, judgment of June 30, 1981, vacated and appeal and cross-appeal from that judgment dismissed; appeal from May 27, 1981, judgment reinstated; judgment against the Litvins reduced; affirmed as modified; judgment for Maring affirmed March 7, 1984

LITVIN et al,
*Appellants - Cross-Respondents,*

*v.*

ENGESETHER,
*Respondent - Cross-Appellant.*

(39-554; CA A21444)

MARING & ASSOCIATES, INC.,
*Respondent,*

*v.*

ENGESETHER,
*Appellant.*

(39-966; CA A21143)
(Consolidated Cases)

678 P2d 1232

Marianne Bottini, Portland, argued the cause for appellants - cross-respondents Vernon A. Litvin and Mildred Litvin. With her on the briefs was Bottini & Bottini, Portland.

Carlton W. Hodges, Portland, argued the cause for respondent - cross-appellant and appellant Ronald Engesether. With him on the briefs was McClaskey, Horenstein & Wynne, Portland.

Michael J. Gentry, Portland, argued the cause for respondent Maring & Associates, Inc., an Oregon corporation.

On the brief were Stephen R. Frank, and Tooze, Kerr, Marshall & Shenker, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

This is a consolidated appeal of two actions, one by plaintiffs Litvin (the Litvins) for specific performance of a land sale contract, which we review *de novo,* and the other by plaintiff Maring & Associates (Maring) to recover a real estate broker's commission on the sale to the Litvins, which we review for errors of law. The two cases were also consolidated for trial to the court.

The trial court advised the parties by letter dated February 27, 1981, that it found that the Litvins and defendant Engesether had entered into a binding contract on or about August 18, 1978, for the purchase and sale of the subject property. Based on that finding, judgment for Maring was entered April 24, 1981. Defendant appealed from that judgment on May 22. Judgment in the Litvins' action ordering specific performance and awarding defendant $22,295.63 on his affirmative answer and counterclaim for improving the subject property was entered May 27, 1981. The Litvins appealed from that judgment on June 26.

An amended judgment was entered in the Litvins' action on June 30, 1981. Defendant moved to dismiss the Litvins' appeal from the May 27 judgment on July 10. The Litvins appealed from the amended judgment on July 29, and defendant cross-appealed on August 10. On December 17, 1981, we allowed defendant's motion to dismiss the Litvins' appeal from the May 27 judgment, apparently because the parties and the court assumed that the amended judgment of June 30 was the final, appealable order. Because we are now satisfied that the trial court lost jurisdiction of the matter upon the Litvins' filing of a notice of appeal from the May 27 judgment, we now reverse our order dismissing the Litvins' earlier appeal and reinstate that appeal. *See Mullinax and Mullinax,* 292 Or 416, 430, 639 P2d 628 (1982).

The amended judgment, entered after the notice of appeal from the May 27 judgment had been filed, was apparently entered in an effort to make the record speak the truth, but it substantially altered the rights of the parties under the May 27 judgment by adding interest and making payment of the judgment for defendant a condition precedent to the Litvins' right to specific performance. We find nothing in the

transcript or the letters from the trial judge to show that he originally intended to include those provisions.

After a judgment is entered, a trial court retains jurisdiction over a case on appeal only to facilitate the appeals process, to correct clerical errors and to make the record speak the truth. *See, e.g., Gordon Creek Tree Farms, Inc. v. Layne,* 230 Or 204, 358 P2d 1062 (1961); *Caveny v. Asheim, et al.* 202 Or 195, 274 P2d 281 (1954); *Bank of Oregon v. Hiway Products, Inc.,* 41 Or App 223, 598 P2d 318 (1979).[1] Trial courts do not have jurisdiction substantially to alter the rights of the parties once an appeal has been taken. *Caveny v. Asheim, et al., supra,* 202 Or at 210. Because the June 30 judgment substantially altered the rights of the parties after the notice of appeal from the original judgment had been filed, it was beyond the trial court's jurisdiction to enter it. It follows that the appeal and the cross-appeal from the amended judgment must be dismissed. Thus we have before us only defendant's appeal from the April 24, 1982, judgment and the Litvins' appeal from the May 27, 1981, judgment.

Defendant's appeal from the judgment for Maring's commission was taken while the action by the Litvins was still pending. Therefore, we must also determine whether we have jurisdiction over that appeal in the light of ORCP 67(B) which, together with ORS 19.010(2)(e),[2] bars an appeal from a

---

[1] ORS 19.033(1) has been amended to provide that trial courts retain jurisdiction to allow and tax attorney fees, costs and disbursements or expenses after the filing of appeals. Or Laws 1983, ch 673, § 22.

[2] ORCP 67 provides, in pertinent part:

"\* \* \* \* \*

"(B) \* \* \* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

"\* \* \* \* \*"

ORS 19.010 provides, in pertinent part:

"(1) A judgment or decree may be reviewed on appeal as prescribed in ORS 19.005 to 19.026 and 19.029 to 19.200.

judgment for less than all claims or parties in an action except upon an "express determination that there is no just reason for delay * * *." ORCP 67(B); *see Industrial Leasing Corp. v. Van Dyke,* 285 Or 375, 591 P2d 352 (1979); *Redmond Electric v. Gonzales,* 63 Or App 606, 665 P2d 373 (1983). No such determination was made here.

Appeals held barred by ORCP 67(B) have included appeals from a judgment failing to adjudicate third party claims, *Industrial Leasing Corp. v. Van Dyke, supra,* from judgments on less than all claims, cross-claims or counterclaims in an action, *Valdez v. Timmerman,* 58 Or App 366, 648 P2d 365 (1982); *Hill v. Oland,* 52 Or App 791, 629 P2d 867 (1981); *Kuvass v. Cutrell,* 50 Or App 529, 623 P2d 1116 (1981), and from judgments against fewer than all defendants named in the complaint. *State Farm v. Sommerholder,* 59 Or App 697, 652 P2d 2 (1982); *Adkins v. Watrous,* 57 Or App 541, 645 P2d 591 (1982); *First Nat'l Bank of Oregon v. Diversified Truss,* 54 Or App 899, 636 P2d 991 (1981).

Those cases are not controlling here. These are separate cases. There are no third party claims, each judgment fully adjudicated all claims pled, and nothing was left pending between Maring and defendant after the entry of judgment in Maring's action. Maring moved to consolidate the trials for reasons of economy and convenience, because each case involved similar questions of law and fact, requiring testimony from the same witnesses. Maring's action was otherwise wholly independent of the Litvins'. We conclude that this is not a situation "[w]hen more than one claim for relief is presented in *an action * * *,*" ORCP 67(B) (emphasis supplied), and therefore ORCP 67(B) does not apply to this case. *See Pacific Northwest Bell v. Davis,* 43 Or App 999, 1002 n 4, 608 P2d 547 (1979).

We briefly summarize the facts. On March 10, 1978, an earnest money agreement was executed by the parties. It

---

"(2) For the purpose of being reviewed on appeal the following shall be deemed a judgment or decree:

"* * * * *

"(e) A final judgment or decree entered in accordance with ORCP 67 B.

"* * * * *"

provided that the defendant would sell the subject property to the Litvins and build a 12-unit apartment complex on it. Details regarding the construction of the apartments were to be agreed upon later. The agreement also included a promise by defendant to pay Maring a broker's commission.

By the middle of May, 1978, it was clear that defendant no longer wanted to build the apartment complex and convey the property to the Litvins for the price stated in the earnest money agreement. The cost of financing the project was apparently greater than defendant had anticipated. The Litvins indicated that they might be willing to pay more for the property, considering defendant's costs, and that matter was a subject of discussion between the parties through their attorneys for a period of two or three months.

On August 18, 1978, the Litvins and their attorney met with defendant and his attorney. At the end of that four-hour meeting, and after adjustments were made in the selling price and the financing arrangements, all the parties thought an agreement had been reached regarding the purchase and sale of the land and the uncompleted apartment complex. The terms of the agreement were put in writing by defendant's attorney that same day. Under the agreement, the Litvins had the right to inspect the first completed portion of the apartment complex to determine whether the workmanship was acceptable. If the workmanship was not acceptable, they had the right to cancel the deal; if the workmanship was acceptable, the completed portion would provide the standard of construction for the rest of the complex. Mr. Litvin inspected the property toward the end of October and, although the building was not finished, indicated a number of concerns regarding the quality of the workmanship.

Defendant continued construction, and the entire complex was near completion by the middle of December. At that time, inspectors from the local building authority inspected the premises but, because of several remaining deficiencies, did not issue an occupancy permit. Those deficiencies were apparently corrected by the defendant, and the units were occupied early in 1979.

On February 23, 1979, defendant's attorney sent the Litvins' attorney, for approval, a final form of the land sale contract. On March 5, 1979, the Litvins sent a corrected copy

of that contract, together with instructions for closing, to the escrow company, where they had already deposited a portion of the down payment. By a certified letter dated March 7, 1979, the Litvins' attorney demanded that defendant cure all remaining problems with the apartment complex and close the transaction within 15 days. On March 19, 1979, defendant sent his own instructions to the escrow company. By April 12, 1979, the Litvins had deposited in escrow the full amount necessary to close the deal, had filed their complaint in the action against defendant and had been approved as a buyer by defendant's mortgage bank. Defendant testified that he was unaware that sufficient funds had been deposited in escrow to close the deal.

On appeal, defendant claims that the trial court erred in not sustaining his demurrer to Maring's complaint, because the complaint failed to allege that Maring was a "duly licensed real estate broker" as required by ORS 696.710. He also claims that the trial court erred in awarding Maring prejudgment interest and concluding that a contract between the Litvins and himself was formed on August 18. The Litvins appeal the trial court's ruling that certain tax benefits which defendant realized by depreciating the subject property after the contract was formed would not be deducted from defendant's costs of improving the property.[3] They also seek to avoid some of those costs entirely and to recover attorney fees. We consider each of the contentions in turn.

ORS 696.710(1) provides that

> "No person engaged in the business of, or acting in the capacity of, a real estate broker or appraiser within this state shall bring or maintain any action in the courts for the collection of compensation without alleging and proving that the person was a duly licensed real estate broker or appraiser at the time the alleged cause of action arose."

Paragraph I of Maring's complaint alleges that "[Maring] is an Oregon corporation and is licensed by the State of Oregon as a real estate organization." Defendant argues that Maring's complaint fails to satisfy the statute because it does not allege that Maring is a duly licensed broker. We disagree. Although

---

[3] Although the trial court refused to hear or consider evidence of tax depreciation, the court allowed the parties to submit memoranda and affidavits for our review.

the legislature used the specific terms "broker or appraiser," instead of the general term "persons engaged in professional real estate activity," ORS 696.010(9), the obvious purpose of ORS 696.710(1) is to assure that only persons involved in real estate transactions who are duly licensed can claim commissions. A real estate organization can be licensed by the Real Estate Division only if it employs a designated broker, ORS 696.080(1), and the record shows that the Division will not issue a broker's license to a real estate organization itself.[4] In this case, the real estate organization's designated broker is Mr. Maring, who was duly licensed when the cause of action arose. In the light of these facts, we conclude that ORS 696.710(1) does not bar Maring's action for collection of compensation.

The trial court found that defendant entered into a valid and binding sale-purchase agreement with a buyer, Litvins, produced by Maring, on August 18, 1978. Apparently the trial court believed that Maring earned its commission on that date and accordingly awarded prejudgment interest from August 18. Defendant challenges that award.

The earnest money agreement of March 10 is the only contract between Maring and defendant appearing in the record. It contains a promise that defendant would pay Maring's commission "forthwith." We understand forthwith to mean "now," i.e., March 10. Maring's complaint prayed for interest from that date in accordance with ORS 82.010(2)(a). However, Maring did not cross-appeal the interest award, and we therefore affirm it. See Booras v. Uyeda, 295 Or 181, 666 P2d 791 (1983); Williams v. Mallory, 284 Or 397, 587 P2d 85 (1978).

Defendant also asks us to find that the August 18 agreement was not a valid and binding land sale contract, because there was no meeting of the minds, and that therefore Maring did not earn its commission. Defendant's argument is that, because the letters of August 18 and September 5 refer to

---

[4] By affidavit, the licensing supervisor for the Real Estate Division testified that broker's licenses are not issued by the Division to real estate organizations, even though ORS 696.080(2) appears to authorize it, but only to an organization's designated broker. Defendant would apparently have us hold that because of the Division's licensing practices, no real estate organization may sue for a commission on its own behalf. We decline to do so.

a "final contract" yet to be drawn, the agreement of August 18 was only an agreement to agree.

■ Because the action between the defendant and Maring is an action at law, our scope of review is limited to whether there is substantial evidence to support the findings of the trial court.[5] We consider that evidence, and inferences reasonably drawn therefrom, in the light most favorable to respondent. *See Livran v. Fowler Tire Service, Inc.,* 282 Or 379, 383-84, 578 P2d 1244 (1978); *Geer v. Farquhar,* 270 Or 642, 644, 528 P2d 1335 (1974); ORCP 62F.

■ There is evidence that the Litvins and defendant expected a "final contract" to be drawn up that would resolve a number of ancillary matters. However, the letters of August 18 and September 5 repeatedly refer to the August 18 agreement as a contract and recite that the new contract would replace the earnest money agreement of March 10. Testimony at trial revealed that both the Litvins and defendant left the August 18 meeting thinking that an agreement had been reached as to the construction and sale of the land and the apartment complex and that each shared a common understanding of the essential terms of that agreement. On the basis of that evidence the trier of fact could reasonably conclude that a binding contract was formed on August 18.

In the light of our disposition of this case, we consider only three of the Litvins' assignments of error. The first of these is that defendant's judgment for the cost of certain improvements to the subject property should have been reduced by the amounts that the improvements had depreciated between the time they were made and the time that the Litvins were entitled to possession. Specifically, they urge that it was error not to set off potential depreciation gains realized by defendant against costs of improvements that the Litvins are obligated to pay. The trial court allowed the parties to argue this issue by memorandum and affidavit. Although it is not clear why defendant's tax position should be relevant in determining the value of improvements made, we

---

[5] We specifically decline to accept defendant's suggestion that we review *de novo* the agreement of August 18. Although this court exercises *de novo* review in equity cases, ORS 19.125(3), there is no appeal from the trial court's decree of specific performance properly before this court. *See Williams v. Mallory,* 284 Or 397, 406-407, 587 P2d 85 (1978).

do not reach that issue, because the record contains no competent evidence whereby the value of the improvements, if other than defendant's cost, could be ascertained.

■ The Litvins additionally argue that they should not be required to reimburse defendant for the cost of a "phantom" studio apartment.[6] We agree. That improvement is nowhere mentioned in the contract between the parties, and they have stipulated that the apartment may not be rentable and, therefore, may not produce direct income. There is real doubt whether it will be given a certificate of occupancy. Although defendant was apparently willing to run the risk that it would be of no value as a rental unit, the Litvins should not also be required to run that risk. Because there is no other evidence indicating the value of the improvement if it is not usable as a rental unit, we are unable to ascertain its value and conclude that defendant should bear its cost.

The Litvins' final contention is that they should receive attorney fees for both the trial and this appeal. That claim is based on a provision in the earnest money agreement of March 10, 1978, allowing attorney's fees to the prevailing party in the event of litigation. We agree with the trial court that the earnest money agreement was superseded by the agreement of August 18, 1978, and that agreement does not provide for attorney fees. Accordingly, Litvins' claim for attorney fees was properly denied.

Because the trial court lost jurisdiction of the matter on June 26, 1981, when the Litvins filed the notice of appeal from the May 27 judgment, the judgment of June 30, 1981, is vacated, and the appeal from the judgment of May 27, 1981, is reinstated. The Litvins' appeal from the June 30 judgment is dismissed. Defendant's notice of cross-appeal from that judgment is dismissed. The Litvins' appeal from the May 27 judgment is reinstated. Judgment against the Litvins is reduced to $17,495.13. In all other respects, the judgments of the trial court are affirmed.

---

[6] Although the city building authorities had issued a permit for a 12-unit apartment complex, defendant undertook to separate the complex into 13 units, so far as we can tell without the Litvins' knowledge or consent. The parties have referred to the 13th unit as a "phantom studio apartment." Defendant's cost in constructing that unit was $4,800.50. The judgment for defendant's costs in improving the property included that amount.