Argued and submitted December 17, 1984, affirmed April 3, 1985

# MOLALLA BOWLING LANES, INC.,
*Respondent,*

*v.*

# COREY,
*Appellant.*

## (82-4-107; CA A30818)

697 P2d 990

Clayton C. Patrick, Salem, argued the cause and filed the briefs for appellant.

John C. Anicker, Jr., Oregon City, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff-seller brought this action for strict foreclosure of a land sale contract, alleging that defendant-purchaser was delinquent on payments required by the contract. Defendant counterclaimed for rescission. The case was tried to the court, which found that defendant was not in default and held that plaintiff was not entitled to strict foreclosure. The court held that the contract was in full force and effect and set a date by which defendant was required to pay the unpaid balance. It dismissed defendant's counterclaim. Defendant appeals that dismissal. We affirm.

On September 6, 1979, the parties entered into a contract for plaintiff to sell defendant a lot adjacent to plaintiff's bowling alley for $60,000. The contract provided for a $7,000 down payment and payments on the principal of $13,000 on November 1, 1979, $20,000 on June 1, 1980, and $20,000 on June 1, 1981. Interest accrued on the unpaid balance at the rate of nine and one-half percent per annum, payable annually. The contract provided that time was of the essence.

Engelgau, a member of plaintiff's board of directors, represented plaintiff in its dealings with defendant. He had been actively involved in the management of plaintiff's bowling alley since 1975. The scope of his authority before February 24, 1980, is unclear, but as of that date he was given the authority to sign checks and transact other business on plaintiff's behalf. The parties discussed defendant's plans to build a drive-in restaurant on the lot. They contemplated that each party would pave the parking area on its respective lot and that they would share that area if needed. Due to the location of the lot purchased by defendant, they also contemplated that defendant's customers would have access over plaintiff's property to reach defendant's restaurant. The contract contained no terms concerning shared parking, easements or any other form of cooperation between the parties.

Defendant made the $7,000 down payment and the $13,000 principal payment due November 1, 1979, but, due to problems in obtaining financing for the construction of his restaurant, he was unable to make the $20,000 payment due June 1, 1980. Engelgau agreed on behalf of plaintiff that the principal payments would be deferred and that plaintiff would

accept payments of interest in the meantime. Apparently because of this deferral, interest was billed quarterly. The bill dated September 7, 1980, stated that the principal payment due June 1, 1980 "[m]ay be delayed until restaurant construction." The next bill, dated November 7, 1980, stated "Principal Payment of 20,000 Due 6/20/80 Deferred Until You Build." On September 1, 1981, plaintiff sent defendant a bill for interest and, in addition, requested a $10,000 principal payment. Defendant contacted Engelgau and received an extension to the summer of 1982 for the payment of any principal. At trial, one of the members of plaintiff's board of directors denied that the board had approved that extension. Engelgau testified that the board did approve the extension, and both he and defendant testified that he told defendant that payments on the principal would be so deferred. The last bill for interest that defendant received was dated December 1, 1981. It is not clear whether defendant made that payment, but up to that time he had kept current on his interest payments.

In December, 1981, Engelgau left his position as a member of plaintiff's board of directors. On December 30, 1981, plaintiff's attorney wrote defendant a letter demanding payment of the unpaid balance of $40,000 plus interest and threatened to file a foreclosure action if that payment was not made within 30 days. Defendant replied that he had understood that plaintiff would be willing to accept interest payments until he could obtain financing. Plaintiff disputed any such agreement and denied that Engelgau had authority to grant any extension. Plaintiff filed this action on April 7, 1982, and trial was held on November, 17, 1983.

■ The trial court found that plaintiff had extended the original time for payment of principal, that it had waived its right to demand strict compliance with the payment schedule and that it could reinstate adherence to that schedule only upon giving plaintiff reasonable notice. Finding that 30 days' notice was not reasonable, it concluded that defendant was not in default and that, therefore, plaintiff was not entitled to strict foreclosure.[1] It held that the contract was in full force

[1] In its brief, plaintiff challenges the trial court's finding that plaintiff had extended the time for payment and its conclusion that plaintiff was therefore not entitled to strict foreclosure. We decline to address that contention, because plaintiff did not cross-appeal. *Williams v. Mallory,* 284 Or 397, 587 P2d 85 (1978).

and effect and set June 1, 1984, as the date for final payment of the unpaid balance. It dismissed defendant's counterclaim for rescission.

Defendant contends that the trial court erred in dismissing his counterclaim, arguing that he is entitled to rescission because (1) plaintiff repudiated the contract by filing this action and (2) there has been a "failure of cooperation" on plaintiff's part.

■■ An action for strict foreclosure is not a repudiation of the contract; to the contrary, it recognizes that the contract is currently in effect and seeks to enforce it. *Nygaard et ux v. Anderson,* 229 Or 323, 330-31, 366 P2d 899 (1961); *Morrison et al v. Kandler et ux,* 215 Or 489, 500, 334 P2d 459 (1958). Bringing such an action prematurely does not amount to a repudiation of the contract that enables the purchaser to effect a mutual rescission. The purchaser's remedy in that instance is to seek an abatement or dismissal of the action. *Zumstein v. Stockton et ux.,* 199 Or 633, 643, 264 P2d 455 (1953); *Grider v. Turnbow,* 162 Or 622, 643, 94 P2d 285 (1939).

The cases cited by defendant are inapposite. In *Soltis v. Liles,* 275 Or 537, 551 P2d 1297 (1976), the court held that the defendants were entitled to rescission of the contract, because the plaintiff had committed a substantial breach by instructing the escrow agent not to accept any more payments from defendants. That breach of contract, rather than the plaintiffs' filing of their action for strict foreclosure, entitled the defendants to rescission. In this case, plaintiff has committed no such breach of contract.

In *Farmer v. Groves,* 276 Or 563, 555 P2d 1252 (1976), the court held that the plaintiffs were entitled to rescission because of the defendant's wrongful declaration of forfeiture. In this case, contrary to defendant's characterization of plaintiff's action as a wrongful declaration of forfeiture, no forfeiture is involved. The land sale contract contains a forfeiture clause, but plaintiff chose not to pursue that remedy, and its complaint is clearly one for strict foreclosure.

Defendant's argument that there has been a failure of

cooperation which has frustrated the purposes of the contract is difficult to follow:

> "Not only did the defendant have the right to rescind the contract because of the wrongful declaration of forfeiture, but also because of the evidence of failure of cooperation in developing the property once Engelgau left. Such lack of cooperation touched the fundamental purpose of the contract, which was to provide the plaintiff with money to complete development of the bowling alley landscaping and parking lot, together with the joint use of the parking lot by the plaintiff and defendant. * * *

> "The entire course of the interactions between the parties while Engelgau was there showed a mutual desire to cooperate. As soon as Engelgau left, that cooperation vanished, and the defendant was presented with a demand for full payment, in breach of the prior agreements of the parties.

> "* * * * *

> "The evidence clearly shows that the ends this contract was designed to serve were frustrated when the plaintiff unilaterally completely changed its position on the contract from one of mutual cooperation for mutual benefit, to a wrongful declaration of forfeiture when there had been no default by the defendant."

■ ■   One of the reasons plaintiff entered into the contract was to acquire funds for the development of the bowling alley. It is difficult to comprehend how bringing this action frustrates that "purpose." If anything, bringing this action is an attempt to fulfill it. Although plaintiff's abrupt demand for payment and the filing of this action may be evidence of strained relations between the parties, it is scant evidence, if any, that plaintiff does not intend to share parking or to allow defendant's customers access over its property. In any event, the contract contains no mention of any required cooperation between the parties. If this foreclosure action is a breach of an independent agreement to extend the time for payment under the contract, it is not a substantial breach entitling defendant to a rescission of the land sale contract. *Mohr v. Lear*, 239 Or 41, 395 P2d 117 (1964).

Affirmed.