Argued and submitted May 2, 1986, affirmed April 8, 1987

## CITY OF SALEM ex rel
## NUEQUITABLE LEASING COMPANY,
*Respondent,*

*v.*

## CLEARWATER CONSTRUCTION COMPANY et al,
*Appellants.*

## CLEARWATER CONSTRUCTION COMPANY,
*Third-Party Plaintiff-Appellant,*

*v.*

## J. B. ROCK PRODUCTS, INC.,
*Third-Party Defendant-Respondent.*

(144511; CA A35798)

735 P2d 373

David J. Buono, Portland, argued the cause for appellants. With him on the briefs was Lindstedt & Buono, P.C., Portland.

James W. Walton, Corvallis, argued the cause for respondents. With him on the brief was Ringo, Walton, Eves & Stuber, P.C., Corvallis.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

This appeal concerns an agreement to provide rock products for a water purification project of the City of Salem. Defendant-third-party plaintiff Clearwater Construction Company (Clearwater) was awarded a contract to construct the project. The plans and specifications called for three different rock products. Two of them, crushed rock and drain rock, were standard inventory items and easy to obtain. The third, a distinctive type of filter sand, had to be specially manufactured to meet the stringent contract specifications.

Before Clearwater was awarded the contract, Paul, of Clearwater, and Beck, of third-party defendant J.B. Rock (J.B.), discussed J.B.'s supplying the rock and sand. Beck believed that J.B. could supply sufficient quantities of suitable quality sand to meet Clearwater's needs and quoted a per cubic yard price. After Clearwater was awarded the contract, Paul forwarded a purchase order to J.B. and asked Beck to sign and return it. The purchase order, which was never signed or returned, included a price for each of the rock products. It also included amounts of each product to be provided with a "+ or −" symbol next to the amounts.

J.B. was not able to provide the amount or quality of sand Clearwater needed, and Clearwater had to obtain sand from other sources at a higher price. Because of Clearwater's difficulty in obtaining suitable sand, the project was not completed on time. J.B. eventually provided 4,900 cubic yards of sand in addition to substantial quantities of the other rock product. Clearwater withheld a portion of the amount due to J.B. for materials that were supplied.

The NuEquitable Leasing Company, which acquired J.B.'s rights to payment, brought an action against Clearwater. Clearwater answered[1] and filed this third-party complaint against J.B. for a set-off against J.B.'s claim of the amount owed to NuEquitable and for additional damages that resulted from J.B.'s alleged breach of contract. The court found that the parties had not entered a binding bilateral agreement and that the purchase order was a standing unilateral offer to purchase rock products at the agreed price from

---

[1] Clearwater later stipulated that NuEquitable should have judgment against it, subject to the resolution of its affirmative defense and third-party claim.

J.B., which was binding only as the products were sold and delivered. Accordingly, the court entered judgment against Clearwater for the amount due to J.B. for materials supplied.

In the first two assignments of error, Clearwater challenges the court's conclusions that the oral discussions between the parties before the award of the construction contract to Clearwater by the city did not result in the formation of a contract. Our review is limited to whether there is sufficient evidence in the record to support the trial court. ORCP 62F; *Litvin v. Engesether,* 67 Or App 240, 678 P2d 1232 (1984); *see Illingworth v. Bushong,* 297 Or 675, 688 P2d 379 (1984).

■ Beck testified that J.B. never offered to produce any specific quantity of sand and never agreed to a specific delivery. Although the parties were in substantial disagreement as to practically the entire course of dealings between them, the evidence is sufficient to support the court's conclusions that a contract was not formed.

■ ■ Clearwater next argues that the provisions of the Uniform Commercial Code determine whether a contract was formed. We agree that the transaction was a sale of goods and that the Uniform Commercial Code is applicable. ORS 72.1050. However, although the provisions of ORS 72.2040 "broaden the range of factors available for the court's consideration in determining whether there has been an offer and seasonable acceptance," *Meister v. Arden-Mayfair, Inc.,* 276 Or 517, 523, 555 P2d 923 (1976), there must still be a meeting of the minds "on the actual terms of [the] mutual undertaking" in order to have a contract. *Goodrich v. Farmers Feed & Supply,* 55 Or App 287, 292, 638 P2d 1148 (1981). As noted, there was substantial evidence supporting the trial court's conclusion that there was no mutual assent.

Clearwater next argues that the issuance of the purchase order was an acceptance of J.B.'s offer to supply sand and rock. However, as discussed above, the evidence supports the court's conclusion that J.B.'s conduct did not constitute an offer to contract with Clearwater. Thus, Clearwater's issuance of the purchase order could not be an acceptance.

■ Clearwater also contends that the court erred in finding that its purchase order was not an offer to enter into a bilateral contract and that Beck's conduct did not manifest

assent to enter into a bilateral contract. Although the Uniform Commercial Code generally treats the submission of a purchase order as an offer which can be rejected or accepted by the seller, *Aaron E. Levine & Co., Inc. v. Calkraft Paper Co.,* 429 F Supp 1039 (ED Mich SD 1976), Beck testified that the sand and gravel industry's custom and usage in regard to purchase orders is that a purchaser is not required to purchase a given quantity of goods and that the supplier is not guaranteed that he will be allowed to furnish the designated quantity of goods. Beck testified that his conduct was consistent with that practice. The "+ or −" designation on the purchase order also can be interpreted to support that explanation of industry practice. Although Clearwater presented evidence to the contrary, Beck's testimony provides enough evidence to support the court's findings.

Clearwater's last argument is that the court erred in failing to find J.B. in breach of contract. Because we have determined that no contract was formed, we need not discuss this issue.

Affirmed.