**SALT LAKE CITY CORPORATION, a municipal corporation of the State of Utah, Plaintiff,**

v.

**KASLER CORPORATION, a California corporation, Defendant.**

**KASLER CORPORATION, a California corporation, Third–Party Plaintiff,**

v.

**MONROC, INC., a Delaware corporation; Holnam, Inc., a Delaware corporation; Protex Industries, Inc., a Colorado corporation; Chen–Northern, Inc., a Utah corporation; DMJM, a Utah corporation, Third–Party Defendants.**

Civ. No. 90–C–382G.

United States District Court, D. Utah, Central Division.

June 8, 1994.

Lynn Larsen and Jack Reed, Larsen, Elton & Reed, Salt Lake City, UT, for third-party plaintiff Kasler.

George Naegle, Michael Drake and Nelson L. Hayes, Richards, Brandt, Miller and Nelson, Salt Lake City, UT, for third-party defendant Monroc.

Roger F. Cutler, Salt Lake City's Atty. Office, Salt Lake City, UT.

Michael W. Homer, Ray G. Martineau, and Craig R. Mariger, Jones, Waldo, Holbrook & McDonough, Salt Lake City, UT.

Jan C. Graham, UT Atty. Gen. Office, Salt Lake City, UT.

## AMENDED MEMORANDUM DECISION AND ORDER RE: SUMMARY JUDGMENT

J. THOMAS GREENE, District Judge.

### INTRODUCTION

This matter came before the Court on third-party defendant Monroc's motion for summary judgment and third-party plaintiff Kasler's constitutional challenge to Utah's Uniform Commercial Code statute of repose, Utah Code Ann. (1990) § 70A–2–725. Third-party plaintiff, Kasler, was represented by Lynn Larsen and Jack Reed. Third-party defendant Monroc was represented by George Naegle, Michael Drake and Nelson L. Hayes. Pursuant to 28 U.S.C. § 2403, which declares that the state shall be allowed to intervene on a constitutional challenge to any statute "affecting the public interest," Utah's Attorney General was notified of this constitutional challenge and provided the opportunity to intervene. The State of Utah did not intervene. The parties filed extensive memoranda and supporting materials, after which the Court heard oral argument and took the matter under advisement. On January 10, 1994, this Court issued its Memorandum Decision and Order. *Salt Lake City Corp. v. Kasler Corp.*, 842 F.Supp. 1380 (D.Utah 1994). Thereafter, defendants timely filed a Motion for Reconsideration and the parties submitted further memoranda and documentation. The matter was discussed at an informal hearing on May 27, 1994, and was again taken under advisement. Now being fully advised, the Court renders its Amended Memorandum Decision and Order.

### FACTUAL BACKGROUND

Salt Lake City Airport Authority ("Airport Authority") undertook construction of an apron and connecting taxiway for Concourse D at the Salt Lake City International Airport. Kasler Corporation ("Kasler") was hired in August of 1983 as the general contractor for the project. In September of 1983, Kasler entered into two purchase agreements (the "Agreements") with Monroc, Inc. ("Monroc"). Pursuant to the Agreements, Monroc agreed to provide coarse and fine aggregates for the project and completed its obligations at least by December of 1984.[1]

Shortly after completion of the project, the concrete began spalling.[2] The Airport Authority notified Kasler that the surface had begun deteriorating by letter dated May 21, 1985.[3] In November 1985, a Kasler representative visited the Salt Lake Airport, and concluded that the problem was localized and very minor.

In May 1988, a different Kasler representative, Bob Varshay, inspected the site. No action was taken to resolve the problem. By letter dated January 22, 1990, Salt Lake City, on behalf of the Airport Authority, informed Kasler that it intended to pursue legal action against Kasler. On June 14, 1990, Salt Lake City filed a complaint against Kasler, alleging breach of contract, breach of guarantee, breach of implied warranties, and negligence. Immediately thereafter, Kasler filed a third-party complaint against Monroc, asserting various contract and tort claims. On May 21, 1991, Salt Lake City settled its claims against Kasler for $1.5 million. Kasler received an assignment of all of Salt Lake City's rights against Monroc, including rights to damages, contribution and indemnity as part of the settlement.

Kasler's third-party complaint is the genesis of Monroc's summary judgment motion. Kasler alleged breach of contract, breach of express and implied warranties, strict liability, negligence, negligent misrepresentation, products liability, breach of indemnification agreement and contribution. Kasler alleges that Monroc breached the contract by pro-

---

1. Monroc asserts that it completed its deliveries under the Purchase Agreements by July of 1984, and Kasler asserts that it was December of 1984. Under the analysis employed herein, the date of completion of deliveries is not controlling.

2. "Spalling" is the crumbling or breaking up of concrete into chips or fragments.

3. Kasler asserts that it did not receive this letter until sometime after August 31, 1985.

viding aggregate that did not meet the specifications of the contract. Monroc claims that the statute of limitations bars the action and that Kasler and Salt Lake City knowingly accepted out-of-specification materials.

### STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. In considering summary judgment, the judge does not weigh the evidence and determine the truth of the matter, but rather determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

### ANALYSIS

#### I. *THE UNIFORM COMMERCIAL CODE CONTROLS THIS DISPUTE.*

This Court determines as a matter of law that the Uniform Commercial Code ("UCC") controls this litigation. Kasler argues that the UCC does not apply because Kasler is not a merchant dealing in goods for UCC purposes. Monroc counters that Kasler is a merchant and the subject of this dispute is a contract for goods.

Pursuant to Section 70A–2–104(1) of the Utah Code, a merchant is:

a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction.

Utah Code Ann. § 70A–2–104(1) (1990). Kasler, a general engineering contractor, is in the business of making concrete and constructing concrete objects. Kasler's occupation requires it to deal in aggregates and requires skill peculiar to the use and particulars of such aggregates. Monroc is in the business of providing the aggregates neces-

sary to make concrete. It is undisputed that both parties hold themselves out as experts in their respective professions. This Court rules that Kasler and Monroc are merchants for UCC purposes.

Kasler also argues that the materials provided under the Agreements are not "goods" for purposes of the UCC, and that the UCC does not govern this dispute. The Agreements obligated Monroc to supply aggregate subbase, crushed aggregate base, pcc and lcb aggregate, one-inch concrete gravel, and concrete sand to Kasler for the purpose of mixing cement.[4] Agreements ¶ 2. Under the UCC, a sale of "goods" includes:

a contract for the sale of minerals or the like ... to be removed from realty is a contract for the sale of goods within this chapter if they are to be severed by the seller....

*Id.* § 70A–2–107. The materials supplied under the Agreements clearly fit within this definition. *See City of Salem v. Clearwater Construction Co.*, 84 Or.App. 674, 735 P.2d 373 (1987) (a contract for sand is a sale of goods governed by the UCC). A contract to provide sand, gravel and aggregate is a contract for the sale of goods. Kasler and Monroc are merchants who contracted for the sale of goods. Accordingly, this contract dispute is governed by the UCC.

#### II. *BREACH OF CONTRACT AND WARRANTIES CLAIMS*

In its first cause of action, Kasler alleges that Monroc breached the Agreements by selling aggregate which did not meet contract specifications. In its second cause of action, Kasler alleges breach of an express warranty by selling aggregate which did not meet contract specifications, breach of warranty of future performance and breach of implied warranties because the material supplied was not merchantable and not fit for its intended purposes. Finally, in its eighth cause of action Kasler alleges breach of implied and express warranties as Salt Lake City's assignee.

---

4. For ease of discussion, the court will refer to the material supplied under the Agreements as "aggregate" unless otherwise specified.

## A. BREACH OF CONTRACT CLAIM

■ Kasler alleges in its first cause of action that the Agreements set forth certain specifications for aggregate size and that Monroc delivered aggregate which did not conform with the specifications. Second Amended Complaint ¶ 12. Kasler argues that although it wasted concrete which it knew to be non-conforming, some out-of-specification aggregate was supplied by Monroc which Kasler mistakenly believed to be within the specifications and therefore did not reject. Kasler asserts that the spalling was caused because Kasler unknowingly incorporated this defective aggregate into the concrete which comprised the apron and taxiway and that it was unaware that Monroc supplied out-of-specification materials · until sometime in 1991. Monroc counters that it did not provide out-of-specification aggregate, but that even if it did Kasler cannot now complain about it because Kasler knowingly accepted non-conforming goods.[5]

Kasler's breach of contract claim is barred because Kasler failed to reject and therefore accepted nonconforming goods.[6] The Utah Uniform Commercial Code allows a buyer to reject goods if the "goods or the tender of delivery fail in any respect to conform to the contract." Utah Code Ann. § 70A–2–601. However, "acceptance of goods by the buyer precludes rejection of the goods accepted." *Id.* § 70A–2–607(2). The UCC defines acceptance of goods as occurring when the buyer:

(a) after a *reasonable opportunity to inspect* the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b) *fails to make an effective rejection* . . . but such acceptance does not occur until

the buyer has had a reasonable opportunity to inspect them; or

(c) does any act inconsistent with the seller's ownership . . . .

*Id.* § 70A–2–606 (emphasis added).

■ Actual knowledge of the nonconformity is not an element or a factor in determining whether a buyer has accepted nonconforming goods under the statute. Goods are accepted under the statute if not rejected after the buyer has had a *"reasonable opportunity to inspect* the goods." *Id.* (Emphasis added). Moreover, an effective rejection of goods "must be *within a reasonable time* after their delivery or tender . . . ." *Id.* § 70A–2–602(1) (emphasis added). Thus, it is apparent that constructive as well as actual knowledge can be determinative of acceptance. Constructive knowledge is imputed when a buyer has a reasonable opportunity to inspect and reasonable time to reject the goods.

It is undisputed that Kasler not only had a reasonable opportunity to inspect the aggregate, but that Kasler rejected "sizeable quantities" of material that it knew were not within specifications. Kasler's Memorandum in Opposition to Summary Judgment, Statement of Facts at 8 (quoting Mr. Calo's deposition). Also, Kasler representatives occasionally visited the Monroc site and obtained samples for testing. *Id.* at 7. Even though Kasler apparently did not test the aggregate on site, it knew that the material was being tested at Chen & Associates' laboratory. Although Chen & Associates was hired by Salt Lake City, rather than by Kasler, it seems clear that Kasler could have initiated inquiries to learn about the results of tests performed on the materials supplied by Monroc.

Kasler did not reject the aggregate now claimed to be defective and which Kasler

---

**5.** Monroc also claims that this UCC action is barred by the statute of limitations. In this regard, Kasler argues that Utah's six year statute of limitations applicable to written contracts controls this dispute, while Monroc asserts that Utah's UCC four year statute, § 70A–2–725, controls. Kasler in turn challenges the constitutionality of § 70A–2–725.

**6.** Notwithstanding Monroc's claim that the aggregate conformed to the contract specifica-

tions, for purposes of this analysis the court assumes without ruling that the material supplied by Monroc was nonconforming. Monroc would be entitled to judgment as a matter of law if the materials conformed, or if Kasler accepted nonconforming goods. Hence, whether the goods actually conformed is not a material issue of fact which could preclude summary judgment on the breach of contract claim.

claims caused the spalling in the apron and taxiway within a reasonable time after delivery. The record before the Court reveals that at the very earliest, Kasler notified Monroc of a desire to "reject" the aggregate in 1990 when Kasler notified Monroc by letter of Salt Lake City's claim against Kasler. Moreover, Kasler incorporated the aggregate into concrete that was used for the taxiway and apron. Incorporating the aggregate into the concrete was an act inconsistent with Monroc's ownership of the aggregate. Because Kasler failed to reject the goods and acted inconsistently with Monroc's ownership of the goods, Kasler, by definition, accepted the aggregate.

■ A buyer who accepts goods can revoke such acceptance under some circumstances. Section 70A–2–608 allows revocation of an acceptance if the "nonconformity substantially impairs its value" and if the buyer accepted it on the reasonable assumption that the nonconformity would be cured or if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances. Utah Code Ann. § 70A–2–608(1). However, subsection 2 of § 2–608 provides:

> Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects....

*Id.* § 70A–2–608(2).

Kasler's acceptance was not induced by difficulty of discovery. To the contrary, Kasler was provided a reasonable opportunity to inspect the aggregate. Under these circumstances, Kasler should have discovered and timely rejected the out-of-specification materials before they were substantially changed.

The Court finds that Kasler had a reasonable opportunity to inspect the materials supplied by Monroc and failed to make an effective rejection thereof. By substantially changing the condition of the aggregate, incorporating it into the concrete apron and taxiway, Kasler acted inconsistently with Monroc's ownership of the aggregate. Kasler accepted non-conforming goods under these circumstances and cannot now revoke that acceptance. In any event, even if this Court were to find that Kasler's breach of contract claims somehow survive §§ 70A–2–607(2) and 70A–2–608(2), Kasler's claims would be barred by the UCC's statute of limitations, which bars any action for breach of contract commenced four years after the breach occurred, which in this case occurred upon tender of delivery.[7] Utah Code § 70A–2–725 (1990); *see also Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214, 218 (Utah 1984), which held that § 70A–2–725 controls all UCC actions for breach of contract for sale of goods. Accordingly, Monroc's motion for summary judgment is granted on Kasler's first cause of action.

### B. EXPRESS AND IMPLIED WARRANTIES CLAIMS

■ In its second cause of action, Kasler alleges that Monroc breached express and implied warranties of merchantability and of fitness. Second Amended Complaint ¶ 15. In Kasler's eighth cause of action, it realleges breach of express and implied warranties as an assignee of Salt Lake City. *Id.* ¶ 41. Kasler also claims Monroc breached a warranty of future performance, and that Kasler was unaware of Monroc's breach of warranty until the spring of 1991.[8]

1. *Kasler's action for breach of the express warranty found in paragraph five of the Agreements and any other implied warranties is barred for failure to give timely notice.*

---

7. The Court considers Kasler's constitutional objection to § 70A–2–725 in the Court's discussion of Kasler's claim for indemnification in its fifth cause of action, *infra.*

8. The UCC statutory period for breach of warranty claims is four years. Utah Code Ann. § 70A–2–725(1) (1990). Under the statute, the cause of action for a breach of warranty typically accrues when tender of delivery is made. However, "where a warranty explicitly extends to the future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." *Id.* § 70A–2–725(2).

The Agreements unambiguously warrant the materials supplied. The Agreements provide:

> 5) All materials furnished under this agreement shall be first-class in every respect, shall be satisfactory to the Buyer and shall conform strictly with the drawings and specifications and all modifications thereof on file ... In the case of materials ordered by sample the materials furnished shall also be equal in every way to the sample submitted.

Agreement # 212–03, ¶ 5; Agreement # 211–03, ¶ 5.

The UCC defines an express warranty as "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Utah Code Ann. § 70A–2–313(1)(a). Such an affirmation creates an express warranty that the "goods shall conform to the affirmation or promise." *Id.* Moreover, "any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample ..." *Id.* § 70A–2–313(1)(c). In this case Monroc expressly warranted that the material supplied would conform with the contract specifications.

Section 70A–2–314 provides that a "warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *Id.* § 70A–2–314. In this case, implied warranties of merchantability and fitness exist in the Agreements between Kasler and Monroc.

Kasler argues that Monroc breached the implied warranties as well as the express warranty found in paragraph five of the Agreements that the aggregate would conform with the contract specifications. However, as we have already seen, Kasler accepted the aggregate tendered by Monroc. Kasler should have discovered any breach by Monroc when Kasler inspected or had the opportunity to inspect the aggregate.

 A buyer's ability to recover damages for a seller's breach, when the goods have been accepted, is limited by the notification requirements of § 70A–2–607(3). Utah Code Ann. § 70A–2–714 (1990). Section 70A–2–607(3) provides that when a tender of delivery has been accepted, a "buyer must *within a reasonable time* after he discovers or *should have discovered* any breach notify the seller of breach *or be barred from any remedy.*" *Id.* § 70A–2–607(3)(a) (emphasis added). Notification to Monroc that it possibly breached the warranties six years after tender of delivery and after Kasler should have discovered the breach is not, as a matter of law, "within a reasonable time." *See Chrysler Credit Corp v. Burns,* 527 P.2d 655 (Utah 1974) (court rejected buyer's claim that seller breached implied warranty of fitness because buyer had accepted and kept the goods for a period of two years without rejecting the goods or attempting to rescind the contract). In any event, even if this Court were to find that Kasler's claims for breach of the express warranty found in paragraph five of the Agreements and breach of other implied warranties somehow survive § 70A–2–607(3)(a), Kasler's claims would be barred by the UCC's statute of limitations, which bars any action for breach of warranty commenced four years after tender of delivery. Utah Code § 70A–2–725(1) & (2) (1990); *see also Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214, 219 (Utah 1984), in which the Utah Supreme Court ruled that § 70A–2–725 provides repose from all actions based on breach of warranty brought more than four years after tender of delivery.[9] Kasler is now barred from any remedy for Monroc's alleged breach of the express warranty found in paragraph five of the Agreements or any implied warranties.

> 2. *Paragraph eleven contains a warranty of future performance and therefore is not barred by the UCC's statue of limitations.*

 Kasler argues that Monroc warranted the future performance of the concrete, as the final product, and that any statute of limitations claimed to be applicable would not

---

**9.** The Court considers Kasler's constitutional objection to § 70A–2–725 in the Court's discussion of Kasler's claim for indemnification in its fifth cause of action, *infra.*

begin to run until Kasler learned or should have learned of the breach. Kasler relies upon the following contractual provision:

> The Seller [Monroc] warrants and guarantees the materials covered by the agreement and agrees to make good at his own expense any defect in such materials which may occur or develop prior to the Buyer's [Kasler's] release from responsibility therefor.

Agreements ¶ 11. Monroc counters that it did not warrant the future performance of the materials supplied, but that in any event the warranty extends only to such materials before they were mixed into concrete.

If the warranty constitutes a warranty of future performance, Kasler may be able to take advantage of the discovery rule exception in the UCC statute of limitations for breach of warranty, which states:

> [W]here a warranty explicitly extends to the future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Utah Code Ann. § 70A–2–725(2).

To fall within the future performance exception, "a warranty must explicitly promise or guarantee future performance of the goods; it must be clear, unambiguous and unequivocal." *Crouch v. General Elec. Co.,* 699 F.Supp. 585, 594 (S.D.Miss.1988) (citations omitted). The overwhelming majority of Courts that have interpreted this section "have been very harsh in determining whether a warranty explicitly extends to future performance." *H. Sand & Co., Inc. v. Airtemp Corp.,* 738 F.Supp. 760, 770 (S.D.N.Y. 1990) (quoting *Standard Alliance v. Black Clawson Co.,* 587 F.2d 813, 820 (6th Cir. 1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979)). *See also* J. White and R. Summers, 1 *Uniform Commercial Code* § 11–9, 551 (3d ed. 1988) ("extension of the normal warranty period does not occur in the usual case, even though all warranties in a sense apply to future performance of goods").

On the other hand, courts have noted examples of language that does create a war-

ranty of future performance, such as a representation that the goods "will satisfactorily perform at all times," "will work properly for a lifetime," or "will give satisfactory service at all times." *Crouch,* 699 F.Supp. at 594; *Owens v. Patent Scaffolding, Co.,* 77 Misc.2d 992, 354 N.Y.S.2d 778, 784 (1974), *rev'd on other grounds,* 50 A.D.2d 866, 376 N.Y.S.2d 948 (1975) (citations omitted).

In the case at bar, the Court finds that paragraph eleven of the Agreements contains a warranty of future performance. Although the question is a close one, paragraph eleven specifically warrants the materials supplied by Monroc against any defect "which may occur or develop *prior to [Kasler's] release from responsibility therefor.*" Agreements ¶ 11 (emphasis added). This language necessarily refers to the future performance of materials supplied by Monroc because Kasler could be released from responsibility only *after* the materials supplied by Monroc were placed into the concrete mix, poured into the apron and taxiway, and used by Salt Lake City. It follows that Monroc warranted that the materials would perform acceptably after being mixed and poured until such time as Kasler was released from responsibility therefor. This Court finds that paragraph eleven explicitly extends to the future performance of the materials supplied by Monroc, and that discovery of the breach of this warranty awaited the time of performance of the materials, i.e. after the materials were mixed and poured into the apron and taxiway.

■ Having established that paragraph eleven is indeed a warranty of future performance, the Court must now determine whether Kasler's claim for breach of warranty of future performance is barred by the UCC's four-year statute of limitations. Under the UCC, "the cause of action accrues when the breach is or should have been discovered." Utah Code § 70A–2–725(2) (1990). In light of the facts before the Court, it is not clear at what time Kasler discovered or should have discovered the breach of the warranty of future performance. If Kasler discovered or should have discovered the breach only after this litigation was commenced, as it claims, the cause of action for breach of the warranty of future perfor-

mance would be timely filed. On the other hand, if Kasler discovered or should have discovered the breach more than four years before Kasler filed its counterclaim, the said cause of action may not survive the UCC's four year statute of limitations. Viewing the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits" in a light most favorable to Kasler, the Court finds that when the breach was or should have been discovered constitutes a genuine issue of material fact which precludes entry of summary judgment against Kasler's second cause of action as it relates to the warranty of future performance. Fed.R.Civ.P. 56. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (on summary judgment, inferences to be drawn from underlying facts must be viewed in light most favorable to party opposing motion). The Court also concludes that similar questions of fact preclude entry of summary judgment against Kasler's eighth cause of action as an assignee of Salt Lake City's claim for breach of the warranty of future performance.[10] Based upon the foregoing, Monroc's motion for summary judgment on Kasler's second and eighth causes of action is denied, but only with respect to the future performance clause. Summary judgment is granted with respect to all other express and implied warranties asserted directly by Kasler, and by Kasler as assignee of Salt Lake City's claims against Monroe.

## III. *KASLER'S TORT CLAIMS*

Kasler's third, fourth, sixth, and seventh causes of action allege negligence, negligent misrepresentation, product liability and strict liability. Kasler's ninth, tenth and twelfth causes of action re-assert the negligence,

product liability and strict liability claims derivatively as an assignee of Salt Lake City.

## A. NEGLIGENCE

### 1. *Kasler's direct negligence claim.*

■ Kasler's fourth cause of action alleges that Monroc owed Kasler a "duty to exercise reasonable care under the circumstances to manufacture and provide Kasler with aggregate which met project specifications and which was suitable for use in the Projects," and that Monroc breached this duty by "manufacturing and selling ... aggregate which did not meet project specifications ..." Second Amended Complaint, ¶¶ 21 & 22.

■ The relationship between Kasler and Monroc is solely a contractual relationship. Utah does not recognize tort actions for a breach of contract. *Brigham Young University v. Paulsen Construction*, 744 P.2d 1370 (Utah 1987). In *Brigham Young*, Brigham Young University undertook the construction of a new building. Since the pipes began to leak shortly after completion of the building, the University brought an action against the general contractors alleging that the contractors negligently failed to supervise installation of the pipe insulation material which did not conform to the project specifications. *Id.* at 1371. The Utah Supreme Court rejected this theory, stating "[a] negligent failure to perform contractual duties is a breach of contract, not a tort." *Id.* at 1372 n. 2.[11] The Utah Supreme Court reasoned that the University's action sounded in contract rather than tort because, absent the contractual obligations between the parties, the contractors had no obligation to the University. *Id.* at 1372.

The Utah Supreme Court has recognized tort actions in contractual relationships in those situations where the parties' actions

10. The relevant question as to the eighth cause of action is when Salt Lake City, not Kasler, discovered or should have discovered the breach of the warranty of future performance.

11. The specific issue addressed in *Brigham Young* was whether the statute of limitations for written contracts or for injury to property should apply. The Supreme Court refused to apply the three-year statute of limitations for injury to property. In so doing, the court distinguished

those cases which had applied the statute for injury to property on the ground that each of the cases involved *tortious* injury to property as opposed to injury caused by a breach of contract. *Brigham Young*, 744 P.2d at 1372–73 (citing *Holm v. B & M Service, Inc.*, 661 P.2d 951 (Utah 1983); *Utah Poultry & Farmer's Cooperative v. Utah Ice & Storage Co.*, 187 F.2d 652 (10th Cir.1951)).

rise to the level of tortious conduct. *See DCR Inc. v. Peak Alarm Co.,* 663 P.2d 433, 437 (Utah 1983) (tort action and contract action may both lie because the tort cause of action was "entirely separate from any contract-based claims"); *Leigh Furniture and Carpet Co. v. Isom,* 657 P.2d 293, 310 (Utah 1982) ("because the law remedies breaches of contract with damages calculated to give the aggrieved party the benefit of the bargain, there is no need for an additional remedy in tort unless the defendant's conduct would constitute a tort independent of the contract").

In the case at bar, Kasler does not allege that Monroc's actions rise to an independent tort. Moreover, this Court rules as a matter of law that Monroc's actions do not rise to the level of tortious conduct. Kasler cannot convert this contract action into one in tort by alleging that Monroc negligently breached the contract. Accordingly, summary judgment with respect to Kasler's fourth cause of action is granted.

### 2. *Kasler's derivative negligence claim.*

■ Kasler's ninth cause of action alleges that Monroc owed Salt Lake City a "duty to exercise reasonable care under the circumstances to manufacture and provide Kasler with aggregate which met project specifications and which was suitable for use in the Projects," and that Monroc breached this duty by "selling Kasler ... aggregate which did not meet project specifications and which was unsuitable for use in the Projects...." Second Amended Complaint, ¶¶ 44 & 45.

■ Generally, no recovery on a negligence claim is allowed for purely economic losses. *Daitom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1580 (10th Cir.1984). However, when damage to the property results, the analysis is removed from consideration of "purely economic" losses. *W.R.H., Inc. v. Economy Builders Supply,* 633 P.2d 42, 44 (Utah 1981). Since Salt Lake City suffered property damage by virtue of the deteriorating apron and taxiway, Kasler urges this

Court to recognize its negligence claim against Monroc as Salt Lake City's assignee.

In *W.R.H.,*[12] the Utah Supreme Court determined that "[w]here some damage to the product results from the negligence of the manufacturer, the consumer's damages are not 'purely economic,' ... and actions to recover all damages resulting from the product's deterioration should be allowed under a negligence theory." *Id.* At first blush, the rationale of the *W.R.H.* case seems to control the case at bar. However, in *Paul Mueller Co. v. Cache Valley Dairy Ass'n,* 657 P.2d 1279, 1286 (Utah 1982), the Utah Supreme Court strictly limited the holding in *W.R.H.* to its particular facts. In *Paul Mueller,* the Supreme Court held that the manufacturer had no duty to guard against economic loss of its purchasers. *Id.* at 1286. The Court recognized that *W.R.H.* created such a duty where the product was "destined for retail sale to unknown and potentially inexperienced purchasers" and the defect was concealed. *Id.* That case was distinguished on the grounds that in *Paul Mueller* the manufacturers provided their products and services to a presumably knowledgeable contractor in accordance with detailed contract specifications, the alleged defects were not concealed and the manufacturers were in no better position to anticipate the possible economic consequences of the defect than the purchaser. *Id.*

The case at bar is factually aligned with *Mueller.* First, Monroc contracted with Kasler, undisputedly a knowledgeable contractor, and Monroc was to perform pursuant to detailed contract specifications. Second, there is no evidence that Monroc attempted to conceal any alleged defect. The size of the aggregates could not have been concealed. Kasler could ascertain the size of the aggregates at any time and in fact the aggregate supplied by Monroc was consistently subjected to sieve analyses. And third, Monroc was in no better (and quite possibly worse) position than Kasler to anticipate potential economic losses if the sand were defective. Moreover, because Monroc contract-

---

12. *W.R.H.* involved defective plywood siding which delaminated over time. The purchaser of the siding brought an action alleging the negli-

gent manufacture of the siding. Summary judgment in favor of the manufacturer was reversed.

ed directly with Kasler and Kasler closely supervised the entire operation, Monroc reasonably could have believed that if any defect occurred, Kasler would notify Monroc and attempt to remedy any such defect. Consequently, like the ultimate consumer in *Paul Mueller*, Salt Lake City would be barred from seeking economic losses from Monroc. Since Monroc would be insulated from a claim by Salt Lake City that Monroc breached a duty of care, Monroc likewise would be insulated from Kasler's derivative action as Salt Lake City's assignee.

Based upon the foregoing, summary judgment is granted on the ninth cause of action.

## B. NEGLIGENT MISREPRESENTATION

■■■ Kasler's sixth cause of action alleges negligent misrepresentation of the quality of aggregate that would be supplied and that Monroc would comply with contract specifications. Second Amended Complaint, ¶ 31. The negligent misrepresentation claim cannot lie in an action stemming solely from promises in a contract. In the absence of an independent tort, a tort cause of action will not lie for breach of contract. Any precontractual representations made by Monroc were subsumed by the contract. Hence, summary judgment with respect to the sixth cause of action is granted.

## C. PRODUCT LIABILITY

■■ Kasler's seventh and tenth causes of action allege, on its own behalf and as assignee of Salt Lake City, that "Monroc sold Kasler aggregate which was defective ... or in a defective condition ... The aggregate ... was 'unreasonably dangerous' ... [and] caused property damage...." Second Amended Complaint ¶¶ 36–38, 50–52. The analysis is the same for the direct and the derivative actions.

■■ The touchstone for a products liability claim is that there must be a "defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer." Utah Code Ann. § 78–15–6 (1992). The Utah legislature has defined "unreasonably dangerous" as follows:

"Unreasonably dangerous" means that the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer or user of that product in that community considering the product's characteristics, propensities, risks, dangers and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer.

Utah Code Ann. § 78–15–6. In *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1581 (10th Cir.1984), the Tenth Circuit ruled, consistently with the aforesaid Utah legislative definition, that "unreasonable dangerousness consistently appears as a prerequisite and touchstone to recovery in tort for damages caused by a defective product."

In opposition to summary judgment, Kasler points to the decision of *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152 (Utah 1979). In *Hahn*, the Utah Supreme Court recognized an action for products liability for defectively manufactured joists and defective welds which caused the roof of the Fashion Place Mall to collapse. *Id.* at 158. However, *Hahn* does not control the case at bar. In that case, the manufacturer sold its products in a defective condition which created an unreasonably dangerous situation. *Id.* The defective condition was concealed by painting over the welds so that there was no reliable way of testing the reliability of the welds. *Id.* Unlike the facts set forth in *Hahn*, the situation between Kasler and Monroc does not rise to a products liability suit. The size of the aggregate provided by Monroc was not concealed.

This Court rules as a matter of law that the material provided by Monroc is not an unreasonably dangerous product. There is no evidence before the Court that aggregate is "dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer." Kasler is a general contractor in the business of making concrete. As such, Kasler is charged with being aware of the problems which could arise if the concrete is mixed with aggregate of the wrong

size.[13] In light of Kasler's knowledge, training, and experience, concrete certainly cannot be said to be "unreasonably dangerous". Accordingly, summary judgment is granted with respect to the seventh and tenth causes of action.

### D. STRICT LIABILITY

Kasler's third cause of action alleges that Monroc breached its implied warranties and should be held strictly liable for selling defective products which proximately caused the concrete deterioration. Second Amended Complaint, ¶ 18. Kasler's twelfth cause of action alleges breach of implied warranties as an assignee of Salt Lake City.

Under both causes of action, Kasler seeks to have Monroc held "strictly liable" for breaching its "implied warranties" by supplying "defective" goods which "proximately caused" Kasler's injury. These causes of action denote a tort-type claim for relief. Under Utah law, the analysis applied to a warranty claim is determined by "the nature of the action and not the pleading labels chosen." *Davidson Lumber v. Bonneville Inv.*, 794 P.2d 11, 14 (Utah 1990) (clear distinction between implied warranties for contract purposes and implied warranties in the tort sense). The term "warranty" as used in tort law is synonymous with strict liability. *Id.* at 14.[14]

Under Utah law, the elements of breach of an implied warranty and products liability are essentially the same. *Ernest W. Hahn, Inc., v. Armco Steel Co.*, 601 P.2d 152, 159 (Utah 1979). *See also Grundberg v. Upjohn Co.*, 813 P.2d 89, 91–92 (Utah 1991) (strict liability claim analyzed under Section 402A of the Restatement (Second) of Torts (1965) which was the predecessor of Utah's Product's Liability Act); *Berry By and Through Berry v. Beech Aircraft*, 717 P.2d 670, 672 (Utah 1985) (plaintiff's claims of strict liability and breach of warranty were analyzed

under Utah's Product Liability law). Kasler's strict liability claims are controlled by, and indistinguishable from, the products liability claim.

This Court has already determined that Monroc's actions do not constitute independent torts nor can they be the grounds for a products liability cause of action. Accordingly, Kasler's strict liability claims cannot lie and summary judgment with respect to the third and twelfth causes of action is granted.

### IV. INDEMNITY AND CONTRIBUTION CLAIMS

Kasler's fifth cause of action is a direct action for indemnification and contribution. Second Amended Complaint, ¶ 28. In the eleventh cause of action, Kasler seeks indemnity and contribution as Salt Lake City's assignee. *Id.* ¶ 56.

### A. CONTRIBUTION CLAIMS[15]

Kasler's claims for contribution fail because this controversy lies strictly in contract rather than tort. The right of contribution "grows out of the existence of liability for [a] tort". *Unigard Ins. Co. v. City of LaVerkin*, 689 P.2d 1344, 1346 (Utah 1984). Common law contribution was designed "to rectify the inequity resulting when one tortfeasor pays more than his share of common liability." *Id.* Since the basic premise underlying Kasler's contribution action is that a tort has been committed, Monroc's motion for summary judgment is granted with respect to the contribution aspects of the fifth and eleventh causes of action.

### B. INDEMNIFICATION

In paragraph twelve of the Agreements, Monroc expressly agreed to indemnify Kasler "from any and all claims, suits, and liability ... from the use by [Kasler] of any of the materials furnished to it by [Monroc]"

---

13. The only allegation that the aggregate was defective is based on the fact that it did not meet the contract specifications—it was allegedly the wrong size.

14. To the extent that Kasler's eighth cause of action, in which breach of warranty as Salt Lake City's assignee is alleged, sets forth a claim for

breach of warranty as a tort concept, it is subsumed by the court's analysis and decision with respect to the strict liability claims.

15. This section also addresses Monroc's separate motion for summary judgment on Kasler's contribution claim.

and from "any and all suits, claims and liabilities for injuries to property ... on account of any act or omission of [Monroc] or its officers, agents, employees and servants." Agreements ¶ 12. Kasler seeks indemnification from Monroc for $1.5 million, the amount of its settlement with Salt Lake City. Monroc argues that Kasler's alleged right of indemnification is barred by the UCC's four year statute of limitations.

 Generally, a cause of action for indemnity does not arise until the liability of the party seeking indemnity results in his damage, either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment.[16] However, in *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 219 (Utah 1984), the Utah Supreme Court observed:

> The absolute language of § 70A–2–725, including the provision that an action accrues at the time of tender of delivery regardless of whether an aggrieved party knows of the breach (generally a ground for tolling), indicates a legislative intent that all actions based on a breach of contract for the sale of goods be brought, if at all, within four years of the tender of delivery.
>
> * * * * * *
>
> Application of the general indemnity rule would contradict this specific direct intention by extending the time in which to bring an indemnity action based on a breach of warranty to four years after the party seeking indemnity becomes liable.

*Perry*, 681 P.2d at 219. The Supreme Court went on to hold that an indemnity action arising from the sale of goods is governed by the statute of limitations found in § 70A–2–725, not the rule generally applicable to indemnity actions. In this regard, the Court said:

> [T]he language of § 70A–2–725 indicates an intent that there be repose from all

actions based on breach of warranty that are brought more than four years after the tender of delivery of the goods.

* * * * * *

> A specific statutory limitation period that seeks ultimate repose of causes of action will control over a general statute of limitations, *even to cut off an indemnity action that technically has not accrued.*

*Perry*, 681 P.2d at 218, 219 (emphasis added).

The holding in *Perry* is especially applicable here since Kasler's action is not based upon common law indemnity, but rather breach of the indemnity clause found in the Agreements.[17] Based upon *Perry*, this Court holds that Kasler's indemnity action was not timely filed, and is therefore barred by the statute of limitations.

Kasler argues that § 70A–2–725 is unconstitutional under the Utah Constitution. However, the Supreme Court of Utah has ruled on precisely the same question raised by Kasler, and upheld § 70A–2–725. *See Perry*, 681 P.2d at 217–19. To rule that § 70A–2–725 is unconstitutional after the Utah Supreme Court has given it full force and effect upon precisely the same issue would amount effectively to reversal of the Utah Supreme Court. Such a ruling would invade impermissibly that Court's exclusive prerogative to state finally the law of Utah. Moreover, where the State was notified of the constitutional question raised by Kasler, but declined to intervene, this Court can only surmise that the State believes the question is settled by existing law. Thus, on authority of *Perry*, the Court finds that § 70A–2–725 is constitutional, and that Kasler's constitutional objections are not well taken. Accordingly, summary judgment is granted with respect to the indemnification claims set forth in Kasler's fifth cause of action.

---

16. An agreement to indemnify is a promise to "make good" for loss or damages incurred. 42 C.J.S. Indemnity § 1 (1991).

17. In *Davidson Lumber Sales, Inc. v. Bonneville Investment, Inc.*, 794 P.2d 11 (Utah 1990), the Utah Supreme Court held that *Perry* does not

apply to common law indemnity actions arising out of true tort actions. However, *Davidson Lumber* has no application here, since the indemnity action in this case arose from a contract for the sale of goods and thus fits squarely within the *Perry* holding.

## C. DERIVATIVE INDEMNIFICATION ACTION

In its eleventh cause of action, Kasler states a claim for indemnification as Salt Lake City's assignee. This derivative claim, like Kasler's direct claim for indemnification, falls prey to the four-year statute of limitations found in § 70A–2–725. *See* discussion under "B. Indemnification," *supra.* Because neither Salt Lake City nor Kasler (in Salt Lake City's behalf) filed an indemnity action against Monroc within four years after Monroc tendered delivery of the goods, Kasler's claim for indemnification as Salt Lake City's assignee is also time-barred. Accordingly, summary judgment on Kasler's eleventh cause of action is granted.

Based upon the foregoing, it is hereby

ORDERED, that Monroc's motion for summary judgment is GRANTED with respect to the first, third, fourth, fifth, sixth, seventh, ninth, tenth, eleventh and twelfth causes of action; it is

FURTHER ORDERED, that Monroc's motion for summary judgment is GRANTED with respect to the second and eighth causes of action, except as such claims relate to the warranty of future performance found in paragraph eleven of the Agreements; it is

FURTHER ORDERED, that Monroc's motion for summary judgment is DENIED with respect to Kasler's second and eighth causes of action, but only with respect to the warranty of future performance found in paragraph eleven of the Agreements.

IT IS SO ORDERED.