In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-06-200 CV


 ______________________


 

ALLAMON TOOL COMPANY, INC., Appellant



V.



JACKEY DERRYBERRY D/B/A FAIRWAY CONSTRUCTION, Appellee






On Appeal from the 9th District Court


 Montgomery County, Texas


Trial Cause No. 03-09-06952 CV






MEMORANDUM OPINION


 This is a contract dispute involving a building construction project. Appellant
Allamon Tool Company originally sued Jackey Derryberry, a supplier of fill dirt, for fraud,
DTPA violations, and removal of a mechanic's lien. Those claims were abandoned at trial. 
 Derryberry filed a counterclaim for breach of contract, along with other causes of
action, against Allamon Tool. The only issues submitted to the jury were Derryberry's
claims against Allamon Tool for breach of contract and attorney's fees. The trial court
signed a final judgment against Allamon Tool and awarded Derryberry $39,550 in damages
based on a breach of two contracts, one written and one oral, and awarded Derryberry
$12,600 in attorney's fees. Allamon Tool filed this appeal. 

 We conclude the jury's findings concerning the written agreement are immaterial. As
a matter of law, the document is not an enforceable contract. We reverse and render a take-nothing judgment on that claim. The evidence is insufficient to support the damage award
on the oral contract and the award of attorney's fees. We reverse the judgment and remand
the cause for a new trial for damages and attorney's fees for breach of that contract.

The Facts


 Appellant's representative on the construction project was Lee Gardner. Derryberry
testified he and Gardner agreed Derryberry would supply "cheap dirt" on the project in
exchange for receiving the rest of the site work. Derryberry described the agreement as
follows:

 Q. [Derryberry's Attorney]. Now, then, did you guys talk about your
ability to deliver dirt to the Allamon Tool site?

 A. [Derryberry]. Yes, sir.

 Q. And how much dirt was being requested at that time?

 A. Well, we talked numbers, we were talking about a thousand loads.

 . . . .

 Q. Were you willing to give a special price on that dirt?

 A. Yes, sir.

 Q. In exchange for what?

 A. For the rest of the site work. 

 Q. What does that [mean]?

 . . . . 

 A. [I]f I supply this [dirt] for this lower price because fortunately I can,
and even if I'm breaking even on that, I know down the line there's, I
mean, looking at the site, there's going to be tons of select fill needed,
tons of crushed concrete. I will do this price if you give me the rest of
it.

 Q. Was that something you told Lee Gardner that was a requirement for
you to give him the dirt?

 A. Yes.

 Q. The fill dirt at a cheap price?

 A. Yes, sir. 


Derryberry delivered some of the dirt before he asked Gardner to sign a document Derryberry
presented. The document states as follows: 

 This is an agreement between Allamon Tool Company (representative Lee
Gardner) and Fairway Construction for the Freeport Road location, Lots 9 &
10. Fairway Construction will supply labor and materials to include, but not
limited to, fill, rip rap, select fill, form sand, base materials, drainage pipes,
machine hours and labor. All invoices close on Saturdays and will be due
within 10 days.


Derryberry and Gardner signed and dated the document. Derryberry testified he would not
have agreed to sell the cheap dirt ("slick fill") at the $25 per load price if Gardner had not
agreed to give him the rest of the site work. 

 Gardner had a different view. He explained that the document he signed was an
agreement to pay Derryberry for materials Derryberry supplied. Derryberry was paid for the
dirt he supplied. Although Gardner acknowledged he orally agreed to purchase 1,000 loads
of dirt from Derryberry for $25 a load, Gardner testified he never agreed to award Derryberry
the rest of the site work and never intended to give Derryberry the exclusive right to sell fill
dirt for the project. Gardner explained the agreement as follows:

 Q. [Appellant's attorney]: Now, there's no amounts for anything in Exhibit
No. 1 [the written agreement]. What was your understanding of what
the amounts were going to be and the prices were going to be? Is that
something that had to be negotiated in the future?

 A. [Gardner] We never really discussed any specifics. The only specifics
we ever discussed were, up front, we talked about a thousand loads of
fill dirt at 25 dollars a load. . . . And so, the only thing that we ever,
discussed was a thousand loads of dirt.

 . . . .

 I had an agreement to buy a thousand loads of dirt. . . . And then when
he [Derryberry] brought the agreement over halfway through his part
on the job, I signed an agreement to pay for the dirt or anything that we
bought from him, that I agreed to pay him. That's the agreement I
signed with Mr. Derryberry on January the 8th of 2003.

 

Gardner further testified that any dirt delivered in the future would have to be negotiated
later. Gardner also explained he never let Derryberry fulfill the 1,000-loads agreement,
because he fired Derryberry. 

The Document


 In issue one, appellant argues the document is not a valid, enforceable contract as a
matter of law, because it lacks material and essential terms and is merely a non-binding
agreement to agree in the future. Whether an agreement is an enforceable contract is
generally a question of law. Meru v. Huerta, 136 S.W.3d 383, 390 (Tex. App.--Corpus
Christi 2004, no pet.). 

 For an agreement to be legally binding, the contract's terms must be sufficiently
definite to enable a court to understand what the promisor undertook. Fort Worth Indep. Sch.
Dist. v. City of Fort Worth, 22 S.W.3d 831, 846 (Tex. 2000); T.O. Stanley Boot Co. v. Bank
of El Paso, 847 S.W.2d 218, 221 (Tex. 1992). If the court is unable to determine the parties'
rights and obligations, there is no enforceable contract. See Searcy v. DDA, Inc., 201 S.W.3d
319, 322 (Tex. App. Dallas--2006, no pet.); Estate of Eberling v. Fair, 546 S.W.2d 329, 335
(Tex. Civ. App.--Dallas 1976, writ ref'd n.r.e.); see also T. O. Stanley Boot Co., 847 S.W.2d
at 221 (no binding contract if an essential term is left open for future negotiation; before a
court can enforce the contract, the parties must agree to the contract's material terms). There
can be no acceptance of an offer to form a contract unless the terms of that contract are
reasonably certain. Restatement (Second) of Contracts § 33(1) (1981); Fort Worth
Indep. Sch. Dist., 22 S.W.3d at 846; Ski River Development, Inc. v. McCalla, 167 S.W.3d
121, 133 (Tex. App.--Waco 2005, pet. denied). The trial court has no authority to ask the
jury to supply an essential contract term that the parties were unable to complete by mutual
agreement. COC Servs., Ltd. v. CompUSA, Inc., 150 S.W.3d 654, 664 (Tex. App.--Dallas
2004, pet. denied). "Fatal indefiniteness in an agreement may concern the time of
performance, the price to be paid, the work to be done, the service to be rendered or the
property to be transferred." Id. Here, the written agreement does not set out the dates the
contract is to begin and end; the quantity, or range of quantity; the quality of the material to
be supplied; or the price or consideration for any material mentioned in the written contract. 
Like Gardner, Derryberry acknowledged these terms would have to be negotiated in the
future. 

 The document states Fairway Construction (1) will provide labor and "machine hours," 
but there are no provisions indicating, for example, the type of labor required, the
responsibility for compensation, or the types of machines to be used. The document contains
no language making this a requirements or exclusive-dealing contract. 

 Courts have implied terms when the surrounding circumstances left little doubt as to
the parties' intentions. See McCalla, 167 S.W.3d at 134; O'Farrill Avila v. Gonzalez, 974
S.W.2d 237, 244 (Tex. App.--San Antonio 1998, pet. denied). We cannot do that here. The
document is essentially an agreement to agree. See Fort Worth Indep. Sch. Dist., 22 S.W.3d
at 846; Pine v. Gibraltar Sav. Ass'n, 519 S.W.2d 238, 243-44 (Tex. Civ. App.--Houston [1st
Dist.] 1974, writ ref'd n.r.e.). Neither the jury nor this Court may supply essential terms that
the parties did not or could not agree upon. As a matter of law, the January 2003 written
agreement is not a valid, enforceable contract. We sustain issue one as to the written
agreement. (2) Because of our disposition of issue one, we need not address issues two through
six. 

The 1,000 Loads Contract


 Issues seven through ten concern the alleged oral agreement (3) regarding Derryberry's
sale of 1,000 loads of dirt to Gardner at $25 per load. Appellant argues the evidence is
legally and factually insufficient to support the findings relating to the 1,000 loads. In a legal
sufficiency challenge, the reviewing court considers the evidence in the light most favorable
to the verdict, credits favorable evidence if reasonable jurors could, and disregards contrary
evidence unless reasonable jurors could not. City of Keller v. Wilson, 168 S.W.3d 802, 807
(Tex. 2005). In a factual sufficiency challenge, the reviewing court considers all of the
evidence and may set aside the verdict only if the evidence is so against the great weight and
preponderance of evidence that it is clearly wrong and unjust. Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001).

 Appellant asserts Derryberry has no pleading to support his claim of an alleged oral
agreement. In his counterclaim, Derryberry pled the written agreement. Derryberry, in
effect, argues the parties tried the oral agreement by consent. 

 Appellant called Gardner as a witness at trial. On direct examination, Gardner
expressly testified to the existence of the oral agreement. Derryberry testified, without
objection, that he agreed to deliver 1,000 loads of dirt at $25 a load. The trial court
submitted jury questions on the oral agreement claim to the jury. Appellant did not object
on "failure to plead" grounds. See generally In re S.A.P., 156 S.W.3d 574, 576-77 (Tex.
2005); see also Southwestern Resolution Corp. v. Watson, 964 S.W.2d 262,264 (Tex. 1997). 

 There is essentially no factual dispute over the existence of the oral agreement to
purchase a 1000 loads of dirt at $25 a load. (4)
 Both Derryberry and Gardner testified to the
existence of the oral agreement. As acknowledged by Gardner, Derryberry began delivering
the loads and continued performance until Gardner removed him from the job. By Gardner's
own admission, a contract existed for the purchase of the 1,000 loads from Derryberry.

 Appellant appears to argue that since the oral agreement has no term of duration,
Gardner could terminate it at will. Generally, contracts that are indefinite in duration and
contemplate continuing performance or successive performances can be terminated at the
will of either party. Clear Lake City Water Auth. v. Clear Lake Utils. Co., 549 S.W.2d 385,
387, 390 (Tex. 1977). The agreement here specified a 1000-load requirement, which served
as a limit. See generally Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P., 111 S.W.3d
187, 197 (Tex. App.--Texarkana 2003, pet. denied). 

 Appellant assumes the oral agreement is like an oral employment contract which by
law is terminable at will. See Brown v. Sabre, Inc., 173 S.W.3d 581, 585 (Tex. App.--Fort
Worth 2005, no pet.). The oral agreement on the 1,000 loads is not an employment contract,
but an agreement for the sale and purchase of fill dirt. Gardner could not, without more, 
unilaterally cancel an agreement to buy a specific quantity of dirt (1,000 loads) from
Derryberry at the specific price of $25 per load. The dirt, not the person delivering the dirt,
was the dominant subject of the agreement. Appellant's refusal to allow Derryberry to enter
the work site did not terminate appellant's obligation under the contract to purchase $1000
loads at $25 a load. 

 Appellant argues there was no contract breach. See generally Aguiar v. Segal, 167
S.W.3d 443, 450 (Tex. App.--Houston [14th Dist.] 2005, pet. denied)(elements of contract
claim). The undisputed facts as reflected in Gardner's and Derryberry's testimony --- that
Gardner agreed to buy 1,000 loads of dirt from Derryberry at $25 a load, that Derryberry
commenced performance and was able to deliver the dirt absent Gardner's firing him, that
Gardner fired Derryberry before completing the purchase agreement and would not allow
Derryberry's truck on the project site to deliver the dirt --- establish appellant's breach of the
contract. We overrule issues seven through ten. 

Damages


 In issues eleven and twelve, appellant argues the evidence is legally and factually
insufficient to support the jury's $8,050 damages award for the 1,000 loads of dirt. Appellant
characterizes the damages as lost profits and states Derryberry's proof is "mere ipse dixit and
not competent testimony." Both Derryberry and Gardner stated Derryberry was paid for the
dirt he actually delivered to the project site. Derryberry explained his profit margin on each
load, testified he delivered hundreds of loads, and testified 566 loads of "slick fill" were
delivered by other suppliers after he was forced to leave the job site. What was not shown
is how many of the 1000 loads Derryberry actually delivered, for which he was paid before
the contract was breached, and the number of loads, if any, for which Derryberry was paid
after Gardner forced him off the site. While Gardner's and Derryberry's testimony provides
some evidence of damages, the evidence is factually insufficient to support the $8,050
damage award for breach of the 1000 load contract. We overrule issue eleven and sustain
issue twelve.

Attorney's Fees


 In issues thirteen and fourteen, appellant argues the evidence supporting the jury's
finding of $12,600 in attorney's fees is legally and factually insufficient. Appellant maintains
Derryberry's counsel did not segregate the time spent on the breach of the oral contract claim
from that spent on prosecuting and defending the other causes of action pursued in the case
for which attorney's fees are not recoverable. Derryberry argues the attorney's fees do not
have to be segregated, because the fees arise out of the same transaction and the claims and
defenses are so interrelated that their "prosecution or defense entails proof or denial of
essentially the same facts." Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 11 (Tex.
1991)(quoting Flint & Assocs. v. Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 624-25
(Tex. App.--Dallas 1987, writ denied). 

 The Supreme Court modified its holding in Sterling after this case was tried. See Tony
Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313 (Tex. 2006). If any attorney's fees in
the case "relate solely to a claim for which such fees are unrecoverable, a claimant must
segregate recoverable from unrecoverable fees." Id.; see also Varner v. Cardenas, 218
S.W.3d 68, 69 (Tex. 2007). "Intertwined facts do not make tort fees recoverable[.] Tony
Gullo Motors, 212 S.W.3d at 313. "It is only when legal services advance both recoverable
and unrecoverable claims that the services are so intertwined that the associated fees need
not be segregated." A. G. Edwards & Sons, Inc. v. Beyer, No. 05-0580, 2007 WL 2811350,
at *5 (Tex. Sept. 28, 2007) (citing Chapa, 212 S.W.3d at 313-14). Derryberry did not
segregate his attorney's fees. 

 The Supreme Court has stated unsegregated attorney's fees are some evidence of what
the segregated fees should be; therefore, we overrule the legal sufficiency challenge in issue
thirteen. See Chapa, 212 S.W.3d at 314. An unsegregated fee amount requires a remand. 
Id. We sustain the factual sufficiency challenge in issue fourteen. 

 Conclusion


 The January 8, 2003, written agreement to agree is unenforceable as a matter of law. 
Although the record establishes the existence and breach of a specific oral contract regarding
the 1,000 loads of dirt, the evidence supporting the amount of damages resulting from the
breach of the contract is factually insufficient. Furthermore, the attorney's fees award are
unsegregated. We reverse the trial court's judgment and remand the cause for a new trial. 

 REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN
PART.

 _________________________________

 DAVID GAULTNEY 

 Justice


Submitted on June 14, 2007 

Opinion Delivered November 8, 2007


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Jackey Derryberry was doing business as Fairway Construction.
2. Some courts have considered rock products and the like to be "goods" under the
Uniform Commercial Code. See, e.g., Salt Lake City Corp. v. Kasler Corp., 855 F.Supp.
1560, 1563-564 (D. Utah 1994); City of Salem v. Clearwater Constr. Co., 84 Ore. App. 674,
735 P.2d 373, 374 (Ore. App. 1987). The parties do not assert the application of Chapter 2
(Sale of Goods) of the Business and Commerce Code. We address the issues presented. The
resolution of the appeal is the same under the Texas Business and Commerce Code. See
Tex. Bus. & Com. Code Ann. § 2.201(a), § 2.204(c); § 2.306 (Vernon 1994).
3. Derryberry submitted jury questions on the oral agreement and the written agreement. 
While he asserts the two are linked, he also argues there was, at the very least, an oral
agreement for 1,000 loads of dirt at $25 per load.
4. The parties do not discuss the statute of frauds presumably because the agreement
was to be performed within one year. See Tex. Bus. & Com. Code Ann. § 26.01 (Vernon
Supp. 2006) (general statute of frauds) (Agreement that is not to be performed within one
year from date of agreement must be in writing). The parties also do not discuss the
application, if any, of the statute of frauds provision in Chapter 2 (Sale of Goods) of the
Texas Business and Commerce Code. See Tex. Bus. & Com. Ann. § 2.201(a) (Vernon 1994)
(Contract for $500 or more must be in writing, unless, among other exceptions, the party
against whom enforcement is sought admits in his pleading, testimony, or otherwise in court,
that a contract was made.).